*In re* GOURD *et al.*

(*Circuit Court, S. D. New York.* January 11, 1892.)

CUSTOMS DUTIES—CLASSIFICATION—"BENEDICTINE CORDIAL."

The *liqueur* cordial known as "Benedictine," prepared in France after a secret formula derived from Benedictine monks of the abbey of Fecamp, in that country, and put up in bottles with labels signed and trade-marked by the proprietors, and accompanied, in the case of each bottle, by a circular claiming for the liquor certain therapeutic and prophylactic qualities; but the fact appearing in evidence that the "Benedictine" was a pleasant after-dinner drink, taken in small *liqueur* glasses, and that the greater part of it was sold to grocers, liquor dealers, and private families, and used as a beverage, *held*, that it was dutiable under Schedule H (paragraph 313, Tariff Ind. New) of the tariff act of March 3, 1883, as a cordial containing spirits, at two dollars per proof gallon, and not as a proprietary preparation under Schedule A (paragraph 99, Tariff Ind. New) of the same act.

(*Syllabus by the Court.*)

At Law. Application by the importers under the provisions of section 15 of the act of congress entitled "An act to simplify the laws in relation to the collection of the revenue," approved June 10, 1890, for a review by the United States circuit court of the decision of the board of United States general appraisers affirming the decision of the collector at the port of New York in the classification for duty of certain Benedictine entered at said port, September 22, 1890, which was assessed for duty as "cordial (not proof) cases of 12-1 and 24-2 bottles each, 3 gallons to the case," at the rate of two dollars per gallon, under the provisions of Schedule H (Heyl's Tariff Ind. New, par. 313) of the tariff act of March 3, 1883, and at three cents per bottle on the bottles containing the same, under the provisions of paragraph 310 of the same schedule and act. Said paragraph 313 reads as follows:

"Cordials, liquors, arrack, absinthe, kirschwasser, ratafia, and other similar spirituous beverages or bitters, containing spirits, and not specially enumerated or provided for in this act, two dollars per proof gallon."

The importers duly protested, claiming that the merchandise was dutiable at 50 per cent. on the value of the Benedictine, as a proprietary preparation, under Schedule A (Heyl's Tariff Ind., New, par. 99) of said tariff act, and at 30 per cent. on the value of the filled bottles containing the same, under Schedule B of said act, (Heyl's Tariff Ind., New, par. 133.) Said paragraph 99 provides as follows:

"Proprietary preparations, to-wit, all cosmetics, pills, powders, troches or lozenges, sirups, cordials, bitters, anodynes, tonics, plasters, liniments, salves, ointments, pastes, drops, waters, essences, spirits, oils, or preparations or compositions, recommended to the public as proprietary articles, or prepared according to some private formula as remedies or specifics for any disease or diseases or affections whatever, affecting the human or animal body, including all toilet preparations whatever, used as applications to the hair, mouth, teeth, or skin, not specially enumerated or provided for in this act, fifty per centum *ad valorem.*

Testimony was taken before one of the board of the United States general appraisers, as an officer of the court, in behalf of the importers and of the government, by which, and from the sample of the *liqueur* pro-

duced, it appeared that the article was known as "Benedictine," and was manufactured at Fecamp, in France, by a company who claimed to have derived the Latin formula for its production from the Benedictine monks who formerly inhabited the abbey at Fecamp, and that such formula was a secret, and the article was protected by trade-marks in Europe and the United States. A circular accompanying each bottle contained in French a high-sounding advertisement regarding the excellence and attractiveness of the liquor, and laying claim on its behalf to certain therapeutic and prophylactic qualities, and stating that it was, (translated,) "in short, a beneficent and agreeable liquor, of which the daily and moderate use can only facilitate the functions of the organism." It was, however, admitted by the importers' witnesses that the article was known and recognized as a cordial, and that it was a pleasant after-dinner drink, taken in small *liqueur* glasses, and that by far the greater part of it was sold in the trade to grocers, liquor dealers, and private families. In behalf of the government, it was shown by the testimony of an expert chemist that an analysis of the cordial in question gave: Absolute alcohol, by volume, 42.24 per cent.; by weight, 32.82 per cent. A practicing physician also gave evidence that many of the favorite cordials and beverages, such as peppermint cordial, (*creme de menthe*,) anisette, kirschwasser, and absinthe, contained substances which were medicinal; two of these, absinthe and kirschwasser, being specifically enumerated in the paragraph (313) of the tariff relating to "spirituous beverages," under which the collector had classified the Benedictine. It was also proved by the testimony of the manager of the bar in one of the largest and oldest hotels in New York city that the Benedictine was served at his bar in small *liqueur* glasses to customers, as were also the other cordials which had been testified to by the physician above referred to; that they were all used as beverages, and sometimes mixed in punches.

*Hartley & Coleman*, for importers.

*Edward Mitchell*, U. S. Atty., and *James T. Van Rensselaer*, Asst. U. S. Atty., for collector.

WHEELER, District Judge. As to this article in the bottle, Benedictine, paragraphs 99 and 313 of the act of 1883 use the same words, to some extent, "cordials" and "bitters." One names cordials as "beverages," and the other names cordials and quite a lot of other things as "proprietary articles," or articles recommended for medicine, or "prepared according to some private formula." It seems to me, in looking this over, that the idea of congress in those two paragraphs was to separate these things into beverages and medicinal preparations; and that whatever was medicine was to come in under one paragraph, and whatever was a beverage was to come in under the other paragraph. On the proofs, I think this is a beverage, not a medicine; and therefore I think it should fall under paragraph 313, and not under paragraph 99. "Spirituous beverages or bitters" of certain classes come under 313, while 99 is for "proprietary articles," including things recommended to the pub-

lic as "proprietary articles, or prepared according to some private for-
mula, as remedies or specifics for any disease or diseases or affections
whatever." And that, I think, is the idea,—that whatever is medicinal,
recommended as such,—it may be good for something, or it may not,—
but if it is of that kind of stuff that is got up to make folks think it will
cure them,—that comes under paragraph 99; but if it is for a drink, for
use as a beverage and not for cure, then it will come under 313; and
I so decide this case. The decision of the board of United States gen-
eral appraisers is affirmed.