# ERHARDT *v.* STEINHARDT.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Argued March 30, April 2, 1894. — Decided April 23, 1894.

Whether Boonekamp bitters, imported in September, 1889, were so similar to absinthe as to be susceptible of being assessed under the clause applicable to it, was a question of fact properly left to the jury.

The jury having determined that fact adversely to the government, it follows that such bitters were at that time to be classified under the proprietary preparation clause of Schedule A of the act of March 3, 1883, c. 121, 22 Stat. 488, 494.

The rate of duty on the bottles was dependent upon the rate of duty on the contents.

THIS was an action to recover duties paid under protest on certain goods imported in September, 1889, and invoiced as Boonekamp Bitters. The collector rated them under the paragraph in Schedule H of section 2502, (act of March 3, 1883, c. 121, amending Rev. Stat. Title 33, 22 Stat. 120, 505,) reading: "Cordials, liquors, [liqueurs,] arrack, absinthe, kirschwasser, ratafia, and other similar spirituous beverages or bitters, containing spirits, and not specially enumerated or provided for in this act, two dollars per proof gallon;" and assessed the bottles in which the bitters were imported at three cents apiece under the paragraph of the same schedule, reading: "Wines, brandy, and other spirituous liquors imported in bottles, shall be packed in packages containing not less than one dozen bottles in each package; and all such bottles, except as specially enumerated or provided for in this act, shall pay an additional duty of three cents for each bottle."

The importers claimed by their protest that the articles should have been assessed under the paragraph of Schedule A of said act, (22 Stat. 494,) which provided as follows: "Proprietary preparations, to wit: All cosmetics, pills, powders, troches, or lozenges, sirups, cordials, bitters, anodynes, tonics, plasters, liniments, salves, ointments, pastes, drops, waters, essences, spirits, oils or preparations or compositions recommended to the public as proprietary articles, or prepared according to some private formula, as remedies or specifics for any disease or diseases, or affections whatever, affecting the human or animal body, including all toilet preparations whatever, used as applications to the hair, mouth, teeth, or skin, not specially enumerated or provided for in this act, fifty per centum ad valorem;" and that the bottles should have been subjected to thirty per cent ad valorem under the paragraph of Schedule B, (22 Stat. 495,) reading: "Green and colored glass bottles, vials, demijohns, and carboys, (covered or uncovered,) pickle or preserve jars, and other plain, moulded, or pressed green and colored bottle glass, not cut, engraved, or painted, and not specially enumerated or provided for in this act, one cent per pound; if filled, and not otherwise in this act provided for, said articles shall pay thirty per centum ad valorem in addition to the duty on the contents."

It appeared that the bitters in question are made in Antwerp and advertised as a proprietary preparation compounded according to a private formula. The wrapper represented the enclosed articles as " fine stomachic bitters known as ' Boonekamp,' the outcome of a fortunate discovery made by Mr. A. E. Boonekamp, of Antwerp, Belgium, in the year 1815." That they possessed valuable properties " as an appetizer and as a regulator to the human system ; " and as having " aperient and digestive qualities ; " that " as a preventative against all forms of epidemic disease they are invaluable," while " taken in doses of one spoonful before each meal, they aid digestion and impart a healthy and vigorous action to the system. They also make a pleasant refreshing beverage taken with water, gin, or aniseed cordial."

A certified copy of the Flemish label, as registered in the Patent Office, and the invoice in French were put in evidence.

Testimony was given tending to show that the bitters were prepared by a secret formula; that they were claimed to be valuable for aperient, digestive, and tonic qualities, and used for the cure or relief of cramps, dyspepsia, dysentery, and sick stomach ; that they were called patent medicines; and sold by dealers in such medicines and by grocers. It was admitted by plaintiffs that their principal trade in the article was with liquor dealers, and evidence was adduced that they were sold by liquor firms and in the wine and spirit department of wholesale groceries, and generally dealt out from retail bars. One bartender testified that he dispensed these bitters to his customers, and " that some liked it in whiskey, some in gin, and some liked it straight." Another witness said they were not made to please the palate, as cordials were, and that " people will shake themselves when they drink them." It further appeared that the bitters were below proof, containing only about $47\frac{1}{2}$ per cent of alcohol by weight, while " proof spirits " require $49\frac{1}{2}$ per cent, and that they contained rhubarb, orange peel, turmeric, and an essential oil, supposed to be oil of anise.

Samples of these bitters were before the jury for examination and comparison, and there was evidence to the effect that

substantially all bitters contained more or less alcohol; that absinthe contained wormwood and anisette, and was bitter; that neither absinthe, nor kirschwasser, nor arrack, nor curaçoa, was a proprietary preparation; and that cordials, liqueurs, and the like, did not contain drugs. Testimony was given as to the value and character of the bottles, but it was not returned in the bill of exceptions. The court charged the jury as follows: "It is unnecessary for me to detain you, except to state the question which it will be for you to answer in this case, affirmatively or negatively: Is plaintiffs' bitters substantially similar to either cordials, liqueurs, arrack, absinthe, kirschwasser, or ratafia? In determining the question of substantial similarity you may take into consideration any or all of these compositions; the appearance presented to the senses; its adaptability for use; the uses for which it is sold; and the effect that it produces. Looking at the question of similarity or dissimilarity on those various grounds, you will determine whether it does or does not present any substantial similarity to those enumerated articles."

The defendant excepted " to the ruling of the court in sending the specific question to the jury, as embodied in the charge."

The jury, after deliberation, answered the question submitted by the court in the negative. Defendant's counsel then moved the court for the direction of a verdict for the defendant on the ground that the articles, although proprietary, were also bitters, containing spirits; that the articles being equally provided for in both sections, the collector was entitled to assess the higher rate of duty under the last paragraph of section 2499 of the Revised Statutes as amended. This motion was denied, and defendant excepted. The jury thereupon rendered a verdict, under the direction of the court, for the plaintiffs, and, judgment having been rendered thereon, this writ of error was sued out.

*Mr. Assistant Attorney General Whitney* for plaintiff in error.

*Mr. Edward Hartley* for defendant in error.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

Counsel for plaintiff in error concedes that the bitters in question are proprietary preparations, and would be dutiable as such if there were no other governing clause; but contends that, as between the paragraph relating to proprietary preparations, and the paragraph relating to cordials, liqueurs, and other similar spirituous beverages, or bitters containing spirits, the latter should control; that the familiar rule that the more specific designation governs cannot be applied, because neither of the two paragraphs is more specific than the other; and that the beverage rate should be applied under the last clause of section 2499 of the Revised Statutes as amended in 1883, (22 Stat. 491,) providing that "if two or more rates of duty should be applicable to any imported article, it shall be classified for duty under the highest of such rates."

But we are of opinion that this contention cannot be sustained on the ground simply that Boonekamp bitters were a proprietary bitters, and also a bitters containing spirits. The proprietary paragraph has such enumerating force that a proprietary bitters, having a special character and value as such, protected by trade-mark and recommended as a remedy, although it contains spirits, as bitters generally do, cannot be treated as non-enumerated, or as so falling within two separate clauses as to involve the same result, unless that conclusion be compelled by other facts and circumstances disclosed in regard to it. The real inquiry here was whether the article, though confessedly dutiable as a proprietary preparation within the statute, was so similar to cordials, liqueurs, arrack, absinthe, kirschwasser, or ratafia as to be also susceptible of being assessed under the clause applicable to the latter. This was a question of fact, and we think properly left to the jury, if there was any evidence upon which a verdict for defendant in error could be justified. The question was, indeed, reduced to a very narrow compass, for it was admitted that absinthe was the only article named in the cordials' clause, to which

the government could claim that Boonekamp bitters bore substantial similarity, a concession based on the view that absinthe was the only "bitters" specified in the clause.

Absinthe, according to the Century Dictionary, is "the common name of a highly aromatic liqueur of an opaline-green color and bitter taste," and is prepared by "steeping in alcohol or strong spirit bitter herbs," the chief of them being wormwood. It was not denied that it is bitter; that it is used as a beverage; and is not a proprietary preparation. It appeared that the wormwood "has a medicinal effect upon the human system as a tonic," and that the article contains anisette, a cordial. On the other hand, Boonekamp bitters is a proprietary preparation, recommended to the public as such, and is prepared according to a private formula, as a remedy for certain specific maladies. The label is duly registered at the Patent Office. There was evidence tending to show that it contains rhubarb, orange peel, turmeric, and an essential oil, probably oil of anise; that it is bitter; that it is not attractive as a beverage, and hardly used distinctively as such; and that while it is sold largely by liquor dealers, and used at bars, it is chiefly sold for use and used in water, wines, or spirits, as a bitter, and for its cathartic, as well as tonic, qualities. A bottle of the bitters was produced for the inspection and consideration of the jury. Both articles contain alcohol in about the same proportion.

We are unable to conclude otherwise than that there was evidence tending to show that Boonekamp bitters were not substantially similar to absinthe, and that there was, therefore, no ground for taking the case away from the jury. The verdict that there was no such similarity determined that these bitters were properly classified under the proprietary preparation clause and this excluded them from all other provisions. The rate of duty on the bottles was dependent on the rate of duty on the contents, and the determination as to the latter controlled.

*Judgment affirmed.*