PORGES & LEVY v. UNITED STATES (No. 2983)[1]

United States Court of Customs Appeals, November 14, 1927

*Frank P. Wilson* and *Bert Hanson* for appellants.
*Charles D. Lawrence,* Assistant Attorney General (*Oscar Igstaedter,* special attorney, of counsel), for the United States.

[Oral argument October 3, 1927, by Mr. Hanson and Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and SMITH, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court. The merchandise involved was originally port wine to which was added, prior to exportation from Spain, 16 grains of potassium nitrate to each fluid ounce of wine. It was assessed for duty by the collector at 20 cents per pound and 25 per centum ad valorem under paragraph 24 of the Tariff Act of 1922.

Paragraph 24 reads as follows:

PAR. 24. Chemical elements, and chemical and medicinal compounds, preparations, mixtures, and salts, distilled or essential oils, expressed or extracted oils, animal oils and greases, ethers and esters, flavoring and other extracts, and natural or synthetic fruit flavors, fruit esters, oils and essences, all the foregoing and their combinations when containing alcohol, and all articles consisting of vegetable or mineral objects immersed or placed in, or saturated with, alcohol, except perfumery and spirit varnishes, and all alcoholic compounds not specially provided for, if containing 20 per centum of alcohol or less, 20 cents per pound and 25 per centum ad valorem; containing more than 20 per centum and not more than 50 per centum of alcohol, 40 cents per pound and 25 per centum ad valorem; containing more than 50 per centum of alcohol, 80 cents per pound and 25 per centum ad valorem.

Appellants claimed in the protest that it was dutiable at 10 or 20 per centum ad valorem under paragraph 1459, or, alternatively, at $1.25 per gallon under paragraph 804.

It appears from the record in the case that the importers had for years been importing port wine for use in curing tobacco; that the merchandise under consideration was of the same grade and quality

---

[1] T. D. 42474.

except that it had been denatured by the addition of 16 grains of potassium nitrate to each fluid ounce of wine; that, by the addition of potassium nitrate, the wine was made unfit for human consumption and, therefore, could be imported and sold without securing permits from the Government for such purposes; and that the importers could have imported potable wine for use in curing tobacco by securing the necessary so-called prohibition permits.

It was claimed by appellants in the court below, and it is claimed here, that the merchandise is dutiable under paragraph 804 of the Tariff Act of 1922, directly or by similitude.

Paragraph 804 provides as follows:

PAR. 804. Still wines, including ginger wine or ginger cordial, vermuth, and rice wine or sake, and similar beverages not specially provided for, $1.25 per gallon: *Provided*, That any of the foregoing articles specified in this paragraph, when imported, containing more than 24 per cent of alcohol shall be classed as spirits and pay duty accordingly.

It is claimed in the alternative that if the merchandise is not dutiable under paragraph 804, it is dutiable at 20 per centum ad valorem as a nonenumerated manufactured article under paragraph 1459.

The court below, in an opinion by McClelland, Justice (Brown, Justice, dissenting), held that, as the merchandise was a denatured wine unfit for human consumption, it did not come within the provisions of paragraph 804, which were obviously intended to cover only such commodities as were fit for use as beverages. The court further held, as we understand its decision, that the merchandise was dutiable as a chemical mixture under paragraph 24, and overruled the protest.

It is claimed by appellants that since the merchandise was originally port wine and the "chemical was not added to change the character" but only to avoid the necessity of securing prohibition permits for importation and sale, the addition being a detriment rather than an advantage, it is dutiable under paragraph 804.

The paragraph provides for "Still wines, including ginger wine or ginger cordial, vermuth, and rice wine or sake, *and similar beverages* not specially provided for, $1.25 per gallon: *Provided*, That any of the foregoing articles specified in this paragraph when imported containing more than 24 per centum of alcohol shall be classed as *spirits* and pay duty accordingly." (Italics not quoted.)

We observe that each of the articles provided for by name is a beverage. Furthermore, the Congress has, by the use of the language "and similar beverages not specially provided for," plainly recognized that fact and specially limited the provisions of the paragraph to such articles.

The proviso clause also clearly indicates that the paragraph was intended to be limited to beverages. It provides that any article

covered by the provisions of the paragraph "containing more than 24 per centum of alcohol shall be classed as *spirits* and pay duty accordingly." (Italics ours.) The involved merchandise is a compound or mixture of potassium nitrate and wine containing more than 18 per centum of alcohol. It is fit only for industrial uses.

We are unable to agree with the argument that the "chemical was not added to change the character of the merchandise." On the contrary, the chemical was added for that very purpose. It changed the wine from a beverage to an article fit for industrial uses only. Had it not done so the merchandise could not have been lawfully imported and sold without obtaining the necessary "permits" from the Government.

It will be noted that paragraph 813 of the Tariff Act of 1922 provides that "No wines, * * * or articles provided for in this schedule containing one-half of 1 per centum or more of alcohol shall be imported or permitted entry except on a permit issued therefor by the Commissioner of Internal Revenue, and any such wines, spirits, or other liquors or articles imported or brought into the United States without a permit shall be seized and forfeited in the same manner as for other violations of the customs laws." Obviously, the Congress in the enactment of the various statutes relating thereto had no intention of permitting the "wines" and "similar beverages" provided for in paragraph 804 to be imported without a permit from the Commissioner of Internal Revenue.

Appellants could have imported wine for industrial purposes by securing permits from the proper governmental agencies. Or, if they so desired, they could, as they did in this instance, denature the wine, change its character from that of a beverage to an article unfit for that purpose, and import and sell it without the usual governmental supervision and restrictions. Having done the latter, can it be argued with reason that the compound or mixture is nothing after all but "wine"? The answer is obvious.

It is argued by counsel that the reasoning and the decisions in *United States* v. *Aetna Explosives Co.*, 256 U. S. 402, and *Morrell* v. *United States*, T. D. 26819, are in point and support the claims of appellants.

In the case of *Aetna Explosives Co.* v. *United States*, 9 Ct. Cust Appls. 298, T. D. 38238, this court held that nitric acid, to which had been added approximately 20 per centum by weight and 5 per centum according to value of sulphuric acid to prevent corrosion of steel tank cars essential to its proper transportation in commercial quantities—not a usable commodity in its imported condition—was not dutiable as a chemical mixture under paragraph 5 of the tariff act of 1913, but was entitled to free entry as nitric acid under paragraph 387 of that act. In concluding its exhaustively prepared opinion

the court said: "We think that the true rule is that the introduction of a quantity of sulphuric acid solely for the purpose of rendering the transportation of nitric acid safe, *and which does not result in a usable mixture*, is more in the nature of an act of shipment than an admixture and does not produce a substance which is dutiable under paragraph 5." (Italics not quoted.) The reasoning and judgment of the court was affirmed by the Supreme Court in *United States* v. *Aetna Explosives Co.*, 256 U. S. 402.

It will be noted that the sulphuric acid was added to the nitric acid for the sole purpose of providing a suitable means of transporting nitric acid in commercial quantities. The sulphuric acid was in a sense a container for the nitric acid. As imported, the mixture was not commercially usable.

In the case at bar the mixture or compound was commercially usable in its imported condition. What effect the potassium nitrate had other than to change the wine from a beverage to a nonbeverage article does not appear. It is argued by counsel that it was a detriment and not an advantage for industrial purposes. But we are unable to find any evidence to that effect in the record. The potassium nitrate was not added as a carrier. In our opinion the decision in the *Aetna Explosives Co.* case is not authority for the contentions of appellants in this case.

In *Morrell* v. *United States*, T. D. 26819, the merchandise consisted of lemon juice fortified by the addition of 7.5 per centum of alcohol. The alcohol was added as a preservative. The court held that the addition of the alcohol for preservative purposes only did not change the character of the article; and that it was lemon juice and not an alcoholic compound for tariff purposes. It is evident that the decision in that case is not authority for the appellants' claims here. We conclude that the merchandise is not directly provided for under paragraph 804.

It is obvious that, if the articles provided for in paragraph 804 are restricted to such as are beverages, the involved merchandise is not dutiable thereunder by similitude of material, quality, texture, or use.

The merchandise was assessed for duty under paragraph 24. The paragraph covers chemical compounds and mixtures, and alcoholic compounds not specially provided for. The court below held that it was dutiable as a chemical mixture. We find nothing in the record contrary to this finding.

The judgment will, therefore, be *affirmed*.

BARBER, J., takes no part in this decision.