UNIVERSAL MERCANTILE CO. *v.* UNITED STATES (No. 3340)[1]

United States Court of Customs and Patent Appeals, March 2, 1931

*Frank L. Lawrence* (*Martin T. Baldwin* of counsel) for appellants.
*Charles D. Lawrence*, Assistant Attorney General (*Reuben Wilson* and *Ralph Folks*, special attorneys, of counsel), for the United States.

[Oral argument February 4, 1931, by Mr. Baldwin and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

[1] T. D. 44698

The merchandise involved consists of Amargo and Orruro bitters. It contains from 44.25 per centum to 47 per centum alcohol by volume—approximately 36 per centum to 39 per centum by weight—and, in addition to other substances, one dose of cascara to each fluid ounce. It was assessed for duty by the collector at the port of San Francisco as "bitters of all kinds (except Angostura bitters) containing spirits," at $5 per proof gallon under paragraph 802 of the Tariff Act of 1922, which reads as follows:

PAR. 802. Brandy and other spirits manufactured or distilled from grain or other materials, cordials, liqueurs, arrack, absinthe, kirschwasser, ratafia, and bitters of all kinds (except Angostura bitters) containing spirits, and compounds and preparations of which distilled spirits are the component material of chief value and not specially provided for, $5 per proof gallon; Angostura bitters, $2.60 per proof gallon.

The bottles, in which the bitters were imported, were assessed for duty by the collector under paragraph 217, hereinafter quoted, at one-third the rate of duty provided therein, by virtue of paragraph 809, which reads as follows:

PAR. 809. When any article provided for in this schedule is imported in bottles or jugs, duty shall be collected upon the bottles or jugs at one-third the rate provided on the bottles or jugs if imported empty or separately.

It is claimed by counsel for appellants that the merchandise is dutiable as either "medicinal compounds, preparations, mixtures," or "all alcoholic compounds, not specially provided for," containing more than 20 per centum and not more than 50 per centum of alcohol, at 40 cents per pound and 25 per centum ad valorem under paragraph 24 of that act, the pertinent part of which reads as follows:

PAR. 24. * * * medicinal compounds, preparations, mixtures, * * * and all alcoholic compounds not specially provided for, * * * containing more than 20 per centum and not more than 50 per centum of alcohol, 40 cents per pound and 25 per centum ad valorem; * * *

It was also claimed in the protests that the bottles in which the bitters were imported were dutiable at the same rate as their contents, in accordance with the provisions of paragraph 217. The pertinent part of the paragraph reads:

PAR. 217. Plain green or colored, molded or pressed, and flint, lime, or lead glass bottles, vials, jars, and covered or uncovered demijohns, and carboys, any of the foregoing, filled or unfilled, not specially provided for, and whether their contents be dutiable or free (*except such as contain merchandise subject to an ad valorem rate of duty, or to a rate of duty based in whole or in part upon the value thereof, which shall be dutiable at the rate applicable to their contents*), shall pay duty as follows: If holding more than one pint, 1 cent per pound; if holding not more than one pint and not less than one-fourth of a pint, 1½ cents per pound; if holding less than one-fourth of a pint, 50 cents per gross: * * * [Italic ours.]

It appears from the record that the bitters were nonpotable and incapable of use as a beverage, and, therefore, were permitted entry

and delivery by the collector without the issuance of a permit therefor by the Commissioner of Internal Revenue, as provided in paragraph 813. The paragraph reads:

PAR. 813. No wines, spirits, or other liquors or articles provided for in this schedule containing one-half of 1 per centum or more of alcohol shall be imported or permitted entry except on a permit issued therefor by the Commissioner of Internal Revenue, and any such wines, spirits, or other liquors or articles imported or brought into the United States without a permit shall be seized and forfeited in the same manner as for other violations of the customs laws.

It appears from the testimony of R. F. Love, a chemist in the Bureau of Prohibition, who testified for the importers, that the merchandise is, in fact, bitters.

Upon this record the court below overruled the protests and the importers appealed to this court.

It is claimed by counsel for appellants that paragraph 802, *supra*, was intended by the Congress to be limited to alcoholic beverages. In support of this contention, our attention has been called to the fact that Schedule 8, in which paragraph 802 appears, is entitled "Spirits, Wines, and Other Beverages." It is argued that all of the articles provided for in that schedule are alcoholic beverages and that, due to the fact that the involved merchandise contains one dose of cascara to each fluid ounce, it is not suitable for beverage purposes, and is, therefore, dutiable as medicinal compounds, preparations, or mixtures, or as an alcoholic compound, not specially provided for, under paragraph 24. It is further contended by counsel for appellants that this case is controlled by the decision of this court in the case of *Porges & Levy* v. *United States*, 15 Ct. Cust. Appls. 298, T. D. 42474.

Paragraph 802 provides for "bitters of all kinds" containing spirits. This provision, in our opinion, was intended to cover all bitters containing spirits, whether used as beverages or as medicinal preparations. There are many kinds of bitters; some are prepared by maceration and subsequent filtration, while others are prepared by complicated distillation processes. Their alcoholic strength varies. They contain a bitter substance or substances and other ingredients, and are used as tonics, appetizers, or digestives. Some are alcoholic beverages while others are medicinal preparations. All, however, contain a substantial amount of alcohol. See the New International Encyclopedia, Encyclopedia Britannica, and Webster's New International Dictionary.

The record does not disclose the use of the involved merchandise, nor does it appear that its character has been changed in the slightest degree by the inclusion of one dose of cascara to each fluid ounce. Many bitters are used for their medicinal properties, and, so far as we are aware, cascara might always have been an ingredient of Amargo

and Orruro bitters. In other words, although, in our opinion, it would not change its dutiable classification, it does not appear from the record that cascara was added to Amargo and Orruro bitters for the purpose of avoiding the necessity of procuring a prohibition permit for entry purposes, nor that the involved merchandise was ever used for purposes other than medicinal.

The title of a schedule or of a paragraph in a tariff act may, in some instances, be strongly indicative of a legislative purpose to limit such schedule or paragraph to articles of a particular class. However, where the Congress has indicated a contrary purpose, as it has in paragraph 802, the title of the schedule or of the paragraph should not be given controlling effect. The purpose of rules and principles of statutory construction is to ascertain, if possible, the legislative intent. *United States* v. *American Shipping Co.*, 13 Ct. Cust. Appls. 346, T. D. 41254, and cases cited.

It is argued by counsel for appellants that provisions of prior tariff acts, similar to those contained in paragraph 802, have been held to be limited to beverages. The following cases have been cited in support of this proposition: *In re Gourd et al.*, 49 Fed. 728; *Erhardt* v. *Steinhardt*, 153 U. S. 177; *Grommes et al.* v. *Seeberger*, 41 Fed. 32.

In the case of *Erhardt* v. *Steinhardt, supra,* the issue concerned the classification of bitters used for medicinal, and not for beverage, purposes. They were assessed for duty by the collector under paragraph 313 of the Tariff Act of 1883, the pertinent part of which reads as follows:

313. Cordials, liquors, arrack, absinthe, kirschwasser, ratafia, *and other similar spirituous beverages or bitters, containing spirits,* and not specially enumerated or provided for in this act, two dollars per proof gallon. [Italics ours.]

It was admitted by the Government that the merchandise there involved was a proprietary preparation and included within the provisions of paragraph 310 of that act. It was claimed, however, that it was similar to the beverages provided for in paragraph 313, and that it was more specifically provided for as "bitters" in that paragraph. The Supreme Court held that, as the merchandise was not a beverage but, on the contrary, was a medicinal preparation, it was not similar to the beverages enumerated in paragraph 313, and was, therefore, dutiable under paragraph 310.

In the case of *Grommes et al.* v. *Seeberger, supra,* the Circuit Court, Northern District, Illinois, held that certain "pepsin bitters," used exclusively as a medicinal preparation, were dutiable as a proprietary preparation under paragraph 310 of the Tariff Act of 1883, rather than as "bitters" under paragraph 313 of that act.

In the case of *In re Gourd et al., supra,* the Circuit Court, Southern District, New York, held that a liqueur, known as Benedictine and used as a beverage, was dutiable under paragraph 313 of the Tariff

Act of 1883, rather than as a proprietary preparation under paragraph 310 of that act.

In each of those cases it was held, in effect, although the matter was not discussed, that the provision for "bitters" in paragraph 313 was limited to bitters used for beverage purposes.

The case of *Erhardt* v. *Steinhardt, supra,* was decided by the Supreme Court April 23, 1894. The Congress, immediately thereafter, in paragraph 240 of the Tariff Act of August 27, 1894, substituted for the language "and other similar spirituous beverages or bitters, containing spirits," contained in paragraph 313 of the Tariff Act of 1883 the following: "and other spirituous beverages or bitters of all kinds, containing spirits." It will be observed that the word "similar" was omitted from paragraph 240 and that the words "of all kinds" were added to the provision for "bitters." The provision in paragraph 240, *supra,* for bitters of all kinds was reenacted in the tariff acts of 1897, 1909, 1913, and 1922. It would seem to be clear, therefore, that it was the purpose of the Congress to include in paragraph 802 bitters of all kinds containing spirits, whether used as beverages or as medicinal preparations.

In the case of *Porges & Levy* v. *United States, supra,* this court held that wine, denatured by the addition of 16 grains of potassium nitrate to each fluid ounce and made unfit for human consumption in order to avoid the necessity of procuring prohibition permits for entry thereof, used for curing tobacco, was not dutiable under paragraph 804 of the Tariff Act of 1922, which provided for "wines and similar beverages" because it was neither a wine nor a beverage.

Due to the fact that paragraph 804 is clearly limited to beverages, our decision in that case is not controlling of the issues here.

As the involved merchandise is bitters containing spirits, it is dutiable under paragraph 802, as assessed by the collector.

The judgment is *affirmed.*