UNITED STATES *v.* JOHN AQUINO, INC. (NO. 3561)[1]

United States Court of Customs and Patent Appeals, April 12, 1933

*Charles D. Lawrence*, Assistant Attorney General (*Hugo P. Geisler*, special attorney, of counsel), for the United States.

*Brown & Carter* (*Allan R. Brown* and *Fred J. Carter* of counsel) for appellee.

[Oral argument December 6, 1932, by Mr. Lawrence and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

Merchandise consisting of a "compound of wine with medicinals," containing more than 20 per centum of alcohol by volume, in bottles, was assessed for duty by the collector as an alcoholic medicinal compound at 40 cents per pound and 25 per centum ad valorem under paragraph 24 of the Tariff Act of 1922, which reads as follows:

[1] T. D. 46365.

PAR. 24. Chemical elements, and chemical and medicinal compounds, preparations, mixtures, and salts, distilled or essential oils, expressed or extracted oils, animal oils and greases, ethers and esters, flavoring and other extracts, and natural or synthetic fruit flavors, fruit esters, oils and essences, all the foregoing and their combinations when containing alcohol, and all articles consisting of vegetable or mineral objects immersed or placed in, or saturated with, alcohol, except perfumery and spirit varnishes, and all alcoholic compounds not specially provided for, if containing 20 per centum of alcohol or less, 20 cents per pound and 25 per centum ad valorem; containing more than 20 per centum and not more than 50 per centum of alcohol, 40 cents per pound and 25 per centum ad valorem; containing more than 50 per centum of alcohol, 80 cents per pound and 25 per centum ad valorem.

The importer claimed, and the court below held, that the imported merchandise was "vermouth" and dutiable as such at $1.25 per gallon under paragraph 804, and that the bottles in which it was contained were dutiable at one-third the appropriate rate provided in paragraph 217, by virtue of the provisions of paragraph 809 of that act.

The respective paragraphs read as follows:

PAR. 804. Still wines, including ginger wine or ginger cordial, vermuth, and rice wine or sake, and similar beverages not specially provided for, $1.25 per gallon: *Provided*, That any of the foregoing articles specified in this paragraph when imported containing more than 24 per centum of alcohol shall be classed as spirits and pay duty accordingly.

PAR. 217. Plain green or colored, molded or pressed, and flint, lime, or lead glass bottles, vials, jars, and covered or uncovered demijohns, and carboys, any of the foregoing, filled or unfilled, not specially provided for, and whether their contents be dutiable or free (except such as contain merchandise subject to an ad valorem rate of duty, or to a rate of duty based in whole or in part upon the value thereof, which shall be dutiable at the rate applicable to their contents), shall pay duty as follows: If holding more than one pint, 1 cent per pound; if holding not more than one pint and not less than one-fourth of a pint, 1½ cents per pound; if holding less than one-fourth of a pint, 50 cents per gross: *Provided*, That the terms "bottles," "vials," "jars," "demijohns," and "carboys," as used herein, shall be restricted to such articles when suitable for use and of the character ordinarily employed for the holding or transportation of merchandise, and not as appliances or implements in chemical or other operations, and shall not include bottles for table service and thermostatic bottles.

PAR. 809. When any article provided for in this schedule is imported in bottles or jugs, duty shall be collected upon the bottles or jugs at one-third the rate provided on the bottles or jugs if imported empty or separately.

On the trial below importer offered in evidence Exhibit I, a bottle containing some of the compound of wine and drugs, as representative of the involved merchandise. The bottle is labeled "Vino Vermouth Tonic. Dose: Two tablespoonfuls before meals."

The importer's witness, Cyrus Aquino, treasurer of the importing company, testified that the involved merchandise consisted of a "compound of wine with medicinals"; that the "medicinals" were "sodium gliserophates, caffeine, and quinine"; that, although the

merchandise contained about 20 per centum of alcohol, it met the "specifications of the Prohibition Department"; that it was a "medicated article" and was sold as "medicated vermouth"; and that it was used for medicinal purposes, two tablespoonfuls before meals being the proper dosage.

Counsel for the Government, with the consent of counsel for importer, introduced in evidence Exhibit II, a Government chemist's analysis of the "medicated vermouth," the pertinent part of which reads:

REPORT

The sample contains the following components:

| | |
|---|---|
| Absolute alcohol by volume | 20.25%. |
| Chlorides | Trace. |
| Cane sugar | 23.08%. |
| Invert sugar | 2.87%. |
| Quinine per 100 cc | 0.0394 gm. |
| Caffeine per 100 cc | 0.455 gm. |
| Total solids per 100 cc | 31.5.gm. |
| Tannic acid per 100 cc | 0.02 gm. |

In sustaining the protest, the court below, in an opinion by Brown, Judge, McClelland, Judge, dissenting, held that the involved issues were controlled by the decision of this court in the case of *Universal Mercantile Co.* v. *United States*, 18 C. C. P. A. (Customs) 441, T. D. 44698, wherein it was held that certain Amargo and Orruro bitters, containing from 44.25 per centum to 47 per centum of alcohol by volume and, in addition to other substances, one dose of cascara to each fluid ounce, were dutiable under the provisions for bitters of all kinds contained in paragraph 802 of the Tariff Act of 1922, rather than as "medicinal compounds, preparations, mixtures, * * * and all alcoholic compounds not specially provided for" under paragraph 24 of that act. We there pointed out that the provision for bitters in paragraph 802 was intended to cover all bitters containing spirits, whether beverages or medicinal preparations; that there were many kinds of bitters; that some were alcoholic beverages, while others were medicinal preparations; and that, as it appeared from the record in that case that the merchandise was, in fact, bitters, it was dutiable under paragraph 802 rather than under paragraph 24, *supra*.

The court distinguished the issues in the case at bar from those involved in the case of *Porges & Levy* v. *United States;* 15 Ct. Cust. Appls. 298, T. D. 42474, wherein this court held that certain port wine, denatured by the addition of 16 grains of potassium nitrate to each fluid ounce, unfit for human consumption and used for curing tobacco, was dutiable as a chemical mixture under paragraph 24, *supra*, rather than under the provisions for wine and similar beverages contained in paragraph 804, *supra*.

The court below seemed to be of opinion that the decision in the *Porges & Levy* case, *supra*, was based entirely upon the fact that the merchandise there involved was unfit for human consumption and that, as the merchandise involved in the case at bar is fit for human consumption, the decision in that case is not applicable to the issues here.

In this connection the court said:

> In that case the court distinguished the case of *Porges & Levy* v. *United States*, 15 Ct. Cust. Appls. 298, T. D. 42474, covering wine containing potassium nitrate (a poison), claimed to be dutiable under paragraph 804, holding that, inasmuch as the wine in that case was not fit for human consumption, it was not dutiable under paragraph 804.
>
> In the case at bar the medicated vermuth *is* fit for human consumption. According to the record it is taken internally. (R., p. 3.) It is therefore not eliminated from paragraph 804 by the rule adopted in the *Porges & Levy case*, *supra*, but is within the rule adopted in the *Universal Merchantile [Mercantile] Co.* case, *supra*.

We held in the *Porges & Levy* case, *supra*, that paragraph 804 was intended by the Congress to be limited to articles therein enumerated and to similar beverages, and that, as the merchandise there involved was neither wine nor a beverage of any kind, it was not dutiable under that paragraph directly, nor by similitude of material, quality, texture, or use. The construction placed upon the paragraph was approved and followed in the case of *Universal Mercantile Co.* v. *United States*, *supra*.

Counsel for appellee contend that paragraph 804 provides for vermuth without limitation, and that, although the involved merchandise is vermuth, medicated, it is covered by that paragraph.

"Vermuth" is defined as "A liqueur made from a fortified white wine and flavored with wormwood and other substances." Webster's New International Dictionary.

In the case of *Rosenbloom & Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 63, T. D. 40884, this court defined the term "liqueur" as follows:

> * * * Liqueur is a generic term which comprises all sweetened or aromatic spirituous beverages and therefore includes cordials which are a particular kind of liqueur, but it does not include bitters, the characteristic of which is bitterness. See Liqueur and Cordials—New Standard Dictionary. See Cordial—Century Dictionary and Encyclopedia Britannica. See Liqueur—Encyclopedia Britannica. *Batjer & Co.* v. *United States*, 11 Ct. Cust. Appls. 60, 63.

Vermuth, like other alcoholic beverages such as whiskey, beer, and wine, is sometimes used as a tonic, appetizer, or digestive. It is, nevertheless, a beverage.

The involved merchandise was produced by combining vermuth and drugs. It is obviously not vermuth, nor, although fit for human consumption, is it a beverage. Accordingly, it is not included within

the provisions of paragraph 804. *Porges & Levy* v. *United States, supra; Universal Mercantile Co.* v. *United States, supra.* It is a medicinal preparation, compound, or mixture, containing more than 20 per centum of alcohol and, in our opinion, is dutiable under paragraph 24 as assessed by the collector.

The judgment is *reversed*.