STROHMEYER & ARPE Co. *v.* UNITED STATES (No. 4283) [1]

United States Court of Customs and Patent Appeals, May 6, 1940

*Barnes, Richardson & Colburn (Samuel M. Richardson* of counsel) for appellant.

*Webster J. Oliver,* Assistant Attorney General (*Charles D. Lawrence,* special Assistant to the Attorney General, and *Joseph F. Donohue,* special attorney, of counsel), for the United States.

[1] C. A. D. 121.

[Oral argument February 8, 1940, by Mr. Richardson and Mr. Lawrence]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, holding certain imported nonalcoholic grenadine, crème de menthe, crème de cacao, crème de apricot, Swedish punch, and aiglontine dutiable as nonenumerated manufactured articles at 20 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930 as assessed by the collector at the port of New York, rather than as beverages containing less than one-half of 1 per centum of alcohol at 15 cents per gallon under paragraph 808 of that act as claimed by the importer-appellant.

The paragraphs in question read:

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

PAR. 808. Ginger ale, ginger beer, lemonade, soda water, and similar beverages containing no alcohol, and beverages containing less than one-half of 1 per centum of alcohol, not specially provided for, 15 cents per gallon.

The Government submitted no evidence.

It appears from the evidence introduced by appellant that the involved crème de menthe and crème de cacao contain no alcohol, otherwise they are identical with the well-known alcoholic liqueurs bearing the same names.

Appellant's witness André Prost stated that he was in the general import business; that he specialized in sirups of various kinds and nonalcoholic beverages; that he had used and served *nonalcoholic crème de menthe and crème de cacao* in his home quite frequently; that he had used them frappéd, that is, they were poured over "shaved ice" but were otherwise unadulterated; and that they were very refreshing drinks. Referring particularly to crème de menthe, the witness stated that "It makes a very sweet beverage, which has a decidedly Creme de Menthe flavor and in fact the Creme de Menthe frappé even with full alcoholic strength doesn't give the idea of alcohol. It gives a sensation of coolness to the person drinking it, who frequently imagines that there is no alcohol in it." The witness further stated that in his "experience" *grenadine* has always been nonalcoholic; that he had used it mixed with four or five times its volume of water—either plain or carbonated—and ice, to what extent he had seen it so used he did not state; and that he had also seen it used as an ingredient in alcoholic drinks of various kinds "just as Benedictine would be used today, for example, with Cognac."

Appellant's witness Thomas Pritchard stated that he had been a waiter and a barkeeper since about the year 1900; that to his knowledge

*crème de menthe and crème de cacao*, although sometimes used as an ingredient in so-called "mixed drinks," are ordinarily drunk as a liqueur, either straight or frappéd; that when frappéd the liqueur is poured over shaved ice in a "cocktail glass." (Whether his testimony was intended to relate to both alcoholic and nonalcoholic *crème de menthe* or *crème de cacao*, he did not state.) The witness further testified that grenadine like that here involved is ordinarily used as one of the ingredients in mixed drinks; that such mixed drinks, in addition to the grenadine, consist of "lemon juice, lime and sugar," and such alcoholic beverages as gin, applejack, or whisky; that when it is so used the proportions are as follows: "an ounce and a half of gin, an ounce and a half of applejack, and an ounce and a half of whisky," depending upon which of those alcoholic beverages is desired, and a "half a teaspoonful of Grenadine"; and that it is sometimes mixed with plain water, seltzer, or white rock, in which instance about one-half ounce of grenadine is used to a glass of water. There is no evidence of record that grenadine is ever drunk without being mixed with beverages.

It further appears from the record that the involved *aiglontine* and *Benedictine* are identical, except that, whereas *Benedictine* is an alcoholic preparation, the involved *aiglontine* is *nonalcoholic*.

The witness Pritchard testified that Benedictine is sometimes mixed with brandy, but that it is a "great drink, either plain or frappéd." There is no evidence of record, however, as to how the *nonalcoholic aiglontine* is used. Furthermore, the record contains no evidence as to the use—whether as a beverage or otherwise—of either the involved *crème de apricot* or the *Swedish punch*.

In holding that the involved articles were not beverages and not dutiable as such under paragraph 808, *supra*, the trial court followed its prior decisions in the cases of *Tonkin Distributing Co. v. United States*, T. D. 46491, 63 Treas. Dec. 1141, and *Cooper Supply Co. v. United States*, Abstract 27726, 65 Treas. Dec. 1454.

In the *Tonkin Distributing Co.* case, *supra*, decided June 23, 1933, the United States Customs Court held that certain imported articles " 'invoiced as nonalcoholic maraschino, chartronine, kirsch, anisette, grenadine, etc.,' " were not beverages within the purview of paragraph 807 of the Tariff Act of 1922 (which is identical in language with paragraph 808, *supra*,) as claimed by the importer, but were dutiable as nonenumerated manufactured articles under paragraph 1459 of that act, as assessed by the collector at the port of San Francisco, the court stating in its decision that, although it appeared from the evidence in the case that those articles might be drunk occasionally in their imported condition, they were chiefly consumed in a diluted condition. The court also stated in its decision that the provision in paragraph 807 of the Tariff Act of 1922 for beverages "containing less than one-

half of 1 per centum of alcohol" should be considered in connection with the "rest of the paragraph," and that when so considered it was clear that the Congress intended to limit that provision to beverages that were similar to those enumerated in the first part of the paragraph; that is, "drinks in a fluid condition like 'ginger ale, ginger beer, lemonade, soda water,' and not sugary sirupy compounds like the merchandise at bar."

In the case of *Cooper Supply Co.* v. *United States, supra,* decided April 23, 1934, the United States Customs Court, following its decision in the *Tonkin Distributing Co.* case, *supra,* held that certain imported "creme de minthe, creme de cacao, maraschino, negrita punch, peach-flavored sirup, apricot-flavored sirup," and other articles not of importance here, imported under the Tariff Act of 1930, were not beverages within the purview of paragraph 808, *supra,* but were dutiable as nonenumerated manufactured articles under paragraph 1558, *supra,* as assessed by the collector at the port of Philadelphia.

Counsel for appellant rely here, to some extent at least, upon the decision of the United States Customs Court in the case of *B. B. Dorf & Co. (Inc.) et al.* v. *United States,* Abstract 3711, 52 Treas. Dec. 550, decided August 11, 1927, wherein it was held that certain preparations, described as "Ainsette, menthe, and crême menthe," were, on the record presented, dutiable as beverages at 15 cents per gallon under paragraph 807 of the Tariff Act of 1922, as claimed by the importers, rather than as nonenumerated manufactured articles at 20 per centum ad valorem under paragraph 1459 of that act, as assessed by the collector at the port of New York, and contend that as that decision was called to the attention of the Congress in the Summary of Tariff Information, 1929, page 1531, and as paragraph 807 of the Tariff Act of 1922 was reenacted without change of language as paragraph 808 of the Tariff Act of 1930, the Congress intended to approve the decision in that case.

It may be said at this point that the "Anisette, menthe, and crême menthe" involved in the *B. B. Dorf & Co. (Inc.) et al.* case, *supra,* were not described in the abstract decision in that case, and there is nothing of record in the instant case to establish that any of the articles here involved are identical with or similar to the preparations involved in that case. We are unable to hold, therefore, that the decision in that case has any application here.

It is further contended by counsel for appellant that paragraph 808, *supra,* was not intended by the Congress to be limited to the beverages enumerated in the first part of that paragraph, and those similar thereto, but that the Congress clearly intended to include in the second provision of that paragraph all beverages, not specially provided for, containing less than one-half of 1 per centum of alcohol,

and that as the involved articles contain no alcohol, they obviously contain less than one-half of 1 per centum and are dutiable under that provision. Counsel further contend that as each of the involved articles is used for beverage purposes, it is a beverage within the purview of paragraph 808, *supra*, whether or not drunk in its imported condition, and that if the involved articles are not directly provided for in paragraph 808, they are, nevertheless, dutiable under that paragraph by similitude (whether they are similar in material, quality, texture, or use, counsel do not state) in conformity with the provisions of paragraph 1559 of the Tariff Act of 1930.

Counsel for the Government contend that it appears from the record that each of the involved articles is used chiefly as an ingredient in the preparation of beverages; that they are not drunk in their imported condition; and that, therefore, they are not beverages within the purview of paragraph 808, *supra*. Relative to the meaning intended to be given the provisions of that paragraph, counsel for the Government state that, although for most practical and legal purposes no distinction should be made between beverages containing no alcohol and those containing less than one-half of 1 per centum of alcohol, paragraph 808, *supra*, is an apparent exception to that rule, and that the second provision contained in the paragraph was no doubt intended by the Congress to cover only such articles as contain some, but not more than one-half of 1 per centum of alcohol.

We are constrained to disagree with the views expressed by the trial court that the word "beverages" in the second provision of paragraph 808, *supra*, was intended by the Congress to be limited to beverages similar to those enumerated in the first part of the paragraph.

It would seem to be clear from the provisions of the paragraph in question that the Congress intended to include within the first provision the beverages enumerated therein and all similar beverages containing no alcohol, and that it intended to include within the second provision all beverages, not specially provided for, which, in their imported condition, contain less than one-half of 1 per centum of alcohol. Furthermore, we are in agreement with the views urged here by counsel for appellant that the second provision of the paragraph was not intended by the Congress to be limited to beverages which contain some, but not more than one-half of 1 per centum of alcohol. Surely, had the Congress intended that the second provision in the paragraph should cover only such beverages as contain some alcohol, it would have said so.

"Beverage" is defined in Webster's New International Dictionary as "Liquid for drinking; drink; usually, drink artificially prepared and of an agreeable flavor; as, an intoxicating *beverage*."

We think it is clear from the provisions of paragraph 808, *supra,* that the Congress intended to provide therein for beverages only, and that it was not the intent of the Congress to include therein articles or preparations which, in their imported condition, are not beverages. See *Porges & Levy* v. *United States,* 15 Ct. Cust. Appls. 298, T. D. 42474, wherein it was held that paragraph 804 of the Tariff Act of 1922 (which is identical in language with paragraph 804 of the Tariff Act of 1930) was intended by the Congress to be limited to beverages.

Paragraph 808, *supra,* being restricted to "beverages," the similitude provisions of paragraph 1559, *supra,* have no application to the issues in the case at bar. *C. H. Arnold & Co.* v. *United States,* 20 C. C. P. A. (Customs) 417, T. D. 46259.

There being no evidence of record relative to the use of the involved crème de apricot, Swedish punch, and aiglontine, we must hold that appellant has failed to overcome the presumption of correctness attending the collector's classification that those articles are not beverages within the purview of paragraph 808, *supra.*

Owing to the fact that the evidence of record clearly establishes that the involved grenadine is not used as a beverage in its imported condition, but, on the contrary, is used merely as a coloring or flavoring ingredient with beverages in making various mixed drinks, we must hold, for the reasons hereinbefore stated, that the involved grenadine is not dutiable under paragraph 808, *supra,* either directly or by similitude.

We come now to a consideration of the evidence relative to the involved crème de menthe and crème de cacao.

As hereinbefore noted, it appears from the testimony of the witness André Prost that he had used and served those preparations frequently in his own home; that they were frappéd, that is, poured over shaved ice; and that they were very refreshing drinks.

It is true that the witness Pritchard did not specifically state in his testimony that he had ever used or served nonalcoholic crème de menthe or crème de cacao. His testimony clearly establishes, however, that generally crème de menthe and crème de cacao are beverages, which are served either straight or frappéd. Furthermore, the point has not been made here by counsel for the Government that the testimony of the witness Pritchard was not intended by the witness to relate to nonalcoholic crème de menthe and crème de cacao. It was evidently understood by counsel for the parties that the witness Pritchard's testimony relative to crème de menthe and crème de cacao was intended to apply to both alcoholic and nonalcoholic crème de menthe and crème de cacao, and such apparently was the understanding of the trial court.

In its decision, the trial court evidently referring to the involved crème de menthe and crème de cacao, because the evidence does not warrant a similar finding as to the other involved articles, stated, in substance, that they were used in their imported condition "as a frappe in shaved ice."

We are of opinion that appellant has established by the evidence of record, at least *prima facie*, that the involved crème de menthe and crème de cacao are beverages within the purview of paragraph 808, *supra*. Accordingly, the judgment of the United States Customs Court is *modified*, being *reversed* as to the involved crème de menthe and crème de cacao and in all other respects *affirmed*, and the cause is *remanded* for proceedings consistent with the views herein expressed.