(C. D. 455)

De Fremery & Co. v. United States

United States Customs Court, Third Division

(Decided March 25, 1941)

*Lawrence & Tuttle* (*George R. Tuttle* and *Charles F. Lawrence* of counsel) for the plaintiffs.

*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard F. Weeks*, *Joseph F. Donohue*, and *Alfred A. Taylor, Jr.*, special attorneys), for the defendant.

Before Cline, Evans, and Keefe, Judges

Cline, Judge: This is a suit against the United States in which the plaintiffs seek to recover a part of the duty assessed on merchandise invoiced as cordials under the specific names Cazanove Creme de Cassis, Cassis, Green Menthe, and Cherry Cordial at the rate of $2.50 per gallon under paragraph 802 of the Tariff Act of 1930, as amended by the trade agreement with France, published in T. D. 48316, plus $2 per gallon under section 600 (a) of the Revenue Act of 1918, as amended by section 2 of the Liquor Taxing Act of 1934.

Protest 969776–G(C), which relates to the merchandise covered by entry No. 5827, was abandoned by the plaintiffs, but protest 969776–G(B) covers the merchandise in the same entry (5827) and also that in entry No. 3557. It was stipulated between the parties that the record in protest 969776–G(C) may be incorporated and made a part of the record in protest 969776–G(B) and—

· That the merchandise covered by Protest 969776–G(C)/62413 is the same merchandise as that covered by Warehouse Entry 5827, referred to in Protest 869776–G(B)/62221, and that the merchandise invoiced as "Cazanove Cassis" or "Cassis" on said Warehouse Entry 5827 is the same in all material respect as that invoiced as "Creme de Cassis" on Warehouse Entry 3557 covered by Protest 969776–G(B)/62221.

As there are two issues in this case we will treat each one separately.

The plaintiffs rely on the claim that the merchandise invoiced as cordials having the names "Cassis" or "Creme de Cassis" is not dutiable at $2.50 per gallon under paragraph 802, as amended by the trade agreement with France, and that it should have been assessed at the rate of 70 cents per gallon, plus $5 per proof gallon on the alcohol content, as fruit juices containing alcohol, under paragraph 806 (a) of the Tariff Act of 1930, or, in the alternative, at $1.25 per gallon under paragraph 804 as a beverage similar to vermouth. The competing provisions read as follows:

PAR. 802. Brandy and other spirits manufactured or distilled from grain or other materials, cordials, liqueurs, arrack, absinthe, kirschwasser, ratafia, and bitters of all kinds containing spirits, and compounds and preparations of which distilled spirits are the component material of chief value and not specially provided for, $5 per proof gallon.

PAR. 802 (Amended by Trade Agreement with France, T. D. 48316)

| | |
|---|---|
| Brandy | $2.50 per proof gal. |
| Cordials, liqueurs, kirschwasser, and ratafia | $2.50 per proof gal. |

PAR. 806 (a) Cherry juice, prune juice, or prune wine, and all other fruit juices and fruit sirups, not specially provided for, containing * * * one-half of 1 per centum or more of alcohol, 70 cents per gallon and in addition thereto $5 per proof gallon on the alcohol contained therein * * *.

PAR. 804. Still wines, including ginger wine or ginger cordial, vermuth, and rice wine or sake, and similar beverages not specially provided for, $1.25 per gallon: *Provided:* That any of the foregoing articles specified in this paragraph when imported containing more than 24 per centum of alcohol shall be classed as spirits and pay duty accordingly.

The first witness called by the plaintiffs was Mr. George P. Dimpfel, a customs examiner at the port of San Francisco who examined the merchandise in this case. He testified that the alcohol content of the Creme de Cassis was 30 proof or 15 per centum by volume; that importations of such merchandise have not exceeded 20 per centum of alcohol; that the alcohol content by weight does not exceed alcohol content by volume; that the French method of giving alcohol content

by stating the "degree" is the same as stating the strength in percentage; that the Treasury Department directed that Creme de Cassis of 16 per centum of alcohol content should be classified as "cordials, liqueurs"; that he returned the merchandise as cordial or liqueur.

The next witness called by the plaintiffs was Mr. Charles Carr Ringwalt, the president of the importing company. A sample representative of the imported Creme de Cassis was introduced in evidence and marked "Exhibit 1." The witness testified that he had been engaged in the sale of the products of the importing company since 1915; that, besides Creme de Cassis, he had dealt in whiskys, cognacs, vermouths, wines, and cordials and that he had learned the uses of all of those products; that merchandise like exhibit 1 is used principally as a flavoring "the base of the drink being some other liquor such as whiskey or gin or brandy, and the Creme de Cassis is added thereto for a flavoring purpose"; that it is generally mixed in the proportion of one of Cassis to two or three of the other, and, at times "just merely used as a dash," which is a few drops; that the use of vermouth is identical; that vermouth "gives you a dry drink whereas Cassis gives you a sweet drink"; that vermouth is used in about the same proportions as Cassis; that the alcohol strength of vermouth is from 15 to 18 per centum by volume.

On cross-examination the witness testified that vermouth is made from wine; that the base is generally muscat wine; that vermouth is not pure wine but is a product made with a wine base to which infusions of certain herbs are added; that vermouth is chiefly used in making cocktails and Cassis is used for the same purpose; that "what is known as a Whiskey Cassis, the proportions are identical to a Manhattan, with the exception that in Whiskey Cassis, Cassis is used and in the Manhattan vermouth is used." The attention of the witness was directed to the statement "De Fremery & Co., San Francisco, Calif., Cazanove Cordial" printed on the revenue stamp on exhibit 1 and the witness stated that the statement was placed on the revenue stamp on De Fremery & Co.'s order. Subsequently the witness qualified his answer by stating:

I expected to be asked this question in cross-examination, the reason that the word "Cordial" appears on the scrip stamp. That, of course, is the Federal law. If we didn't place——we put it on there by De Fremery & Co.'s direction, but if it were not on there I would be in jail.

The defendant introduced the testimony of Mr. Jesse R. Fischer, who is office manager for Parrott & Co., importers and wholesalers of distilled spirits and wines. The witness testified that his firm is the agent of W. A. Taylor & Co. of New York; that in his position as office manager he has charge of the financial operations of Parrott & Co., such as "taking charge of all importations, seeing that merchandise is billed out, and so forth"; that he had occupied such position

since May, 1934. The witness produced a price list of W. A. Taylor & Co. and defendant offered the same in evidence. On cross-examination the witness testified that the price list was issued on March 1, 1939, and that his firm had handled cordials and liqueurs only during the past year and did not represent Taylor & Co. as far back as 1937, when the importations herein involved were received. The admission of the exhibit was denied upon objection thereto by counsel for the plaintiffs. It was marked "Exhibit 3 for identification."

The next witness called by the defendant was Mr. Forest Sanford Paxton, who is merchandise manager of the Liquor Department of McKesson & Robbins. He testified that he had been selling Creme de Cassis to the retail trade since 1933; that he sold it as a cordial or liqueur. On cross-examination he testified that he did not mean to say that his invoices in wholesale transactions called it a cordial or a liqueur but he meant that "we classify it in our price list as a cordial"; that in wholesale transactions it is called "Creme de Cassis"; and that during all of his experience it has been dealt in, so far as the invoices are concerned, under the words "Creme de Cassis" as distinguished from the words "cordials" or "liqueurs."

The record contains also a deposition of Mr. Louis Clavieres taken before the United States Consul at Bordeaux, France. This deposition was received in evidence and marked "Exhibit 2, 969776-G (C)." The witness testified that he is a distiller and that he is familiar with the shipment of May 22, 1937, under consular invoice 1798, which is the invoice covered by entry 5827; that his position is chief distiller and he directed the manufacture of the goods. His testimony as to the process of manufacture of the Cassis is as follows:

(8) In reference to merchandise marked Cassis 2996/3017, please answer the following questions:

(a) What materials or substances were used in manufacturing this merchandise?—A. Fresh blackcurrants, wine alcohol and sugar.

(b) Describe the process of manufacture, giving the details of each of the various steps?—A. Blackcurrants are put in wine alcohol for fifty or sixty days. The juice thus obtained is mixed with sugar and there results "creme de cassis" (blackcurrant cordial).

(c) Does the merchandise contain any sweet wine, citrus-fruit wine, peach wine, cherry wine, berry wine, apricot wine, or apple wine, fortified, respectively, with grape brandy, citrus-fruit brandy, peach brandy, cherry brandy, berry brandy, apricot brandy, or apple brandy?—A. No.

(d) Was the merchandise produced or made by a process of distillation? If so, please give full details as to what occurred before distillation and after distillation.—A. No.

(e) Was the merchandise produced or made by a mixing or blending of alcohol with other ingredients? If so, please give full details as to what occurred before this mixing or blending and after the mixing or blending.—A. It is made only by the mixing of the fresh fruit and wine alcohol as described above.

(f) What was the alcoholic content by weight and by volume?—A. Fifteen degrees by volume.

The appraiser describes the merchandise in his report in protest 969776–G (C) as "an alcoholic preparation dutiable as a cordial at $2.50 per gallon under paragraph 802 in accordance with the French Trade Agreement published in T. D. 48316. See T. D. 47754 (par. 5)." The authority cited by the appraiser relates to a decision of the Commissioner of Customs, reading as follows:

Creme de cassis, an alcoholic preparation made by macerating black currants in alcohol or brandy and containing about 17 percent of alcohol by volume, is a cordial dutiable under paragraph 802, Tariff Act of 1930. As this ruling will result in the assessment of duties at a higher rate than has heretofore been assessed under an established and uniform practice, it should be made effective only with respect to goods entered for consumption or withdrawn from warehouse for consumption after the expiration of thirty days after the publication of this abstract in the weekly TREASURY DECISIONS, Bureau letter to collector of customs, New York, N. Y., June 15, 1935.

As the merchandise was returned for duty at $2.50 per gallon under one of the *eo nomine* provisions enumerated in the trade agreement with France, and the record indicates that it was classified as a cordial, the provision for "other spirits manufactured or distilled from grain or other materials" and "compounds and preparations of which distilled spirits are the component material of chief value" in paragraph 802 of the Tariff Act of 1930 are not herein involved.

The plaintiffs claim that the merchandise invoiced as "Creme de Cassis" or "Cassis" is not a cordial because, for one thing, it contains only 15 per centum of alcohol by volume, and, secondly, that it is not within the definition of "cordial" in Webster's New International Dictionary, reading as follows:

Cordial, *n.* 1. Any invigorating and stimulating preparation, as a medicine, food, or drink; as, a peppermint *cordial.*
2. *Com.* Aromatized and sweetened spirit, used as a beverage; a liqueur.
3. Anything that comforts, gladdens, and exhilarates.

One of the definitions of cordial is "a liqueur" which is defined in the same authority as follows:

Liqueur, *n.* 1. A spirituous liquor flavored with various aromatic substances and usually sweetened. Liqueurs are usually made by steeping the flavoring material in the spirit, and afterward distilling. They were originally prepared for medicinal use, but are now chiefly used as beverages.
2. An alcoholic sirup, as that added to champagne during the process of manufacture.

Cassis is described in the same work as a foreign word as follows:

Cassis, *n.* The black currant of Europe (*Ribes nigrum*); also, a liqueur or cordial flavored with currants.

The words "liqueurs" and "cordials" were judicially defined in *Batjer & Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 60, T. D. 38726, as follows:

Liqueurs are perfumed or flavored spirits sweetened by the addition of sugar, although the designation is also applied it seems to a very high grade of sweetened or unsweetened spirits which, although not artificially perfumed or flavored, have a characteristic delicate aroma of their own and a particularly agreeable taste.— (See "Liqueur," New International Encyclopedia and Encyclopedia Britannica, 11th ed.)

Cordials are a special kind of liqueur prepared either by adding brandy, alcohol, or other spirits and sugar to fresh fruit juices, or by distilling the fermented juices of fruits having a special flavor, or by fortifying an aromatized wine with brandy or other spirits.—(See "Liqueur," New International Encyclopedia and Encyclopaedia Britannica, 11th ed. See "Vermuth," Century Dictionary and Cyclopedia and Encyclopaedia Britannica, 11th ed. See "Maraschino," Standard Dictionary.)

The plaintiffs claim that since the alcoholic strength of the Cassis in this case is but 15 per centum, it is not one of the cordials or liqueurs provided for in paragraph 802 of the trade agreement with France and that, as its use is similar to that of vermouth, it should have been classified under the provision for "similar beverages not specially provided for," in paragraph 804 of the Tariff Act of 1930. The plaintiffs direct attention also to the proviso to paragraph 804, reading—

Provided, That any of the foregoing articles specified in this paragraph when imported containing more than 24 per centum of alcohol shall be classed as spirits and pay duty accordingly.

Plaintiffs argue that this proviso indicates that Congress intended that the specified alcoholic content should mark the dividing line between the merchandise covered by paragraphs 804 and 802, that is, merchandise containing over 24 per centum of alcohol should fall within paragraph 802, while that containing 24 per centum or less should be classified under paragraph 804.

In the case of *O. C. Blache & Co.* v. *United States*, 4 Treas. Dec. 735, T. D. 23253 (G. A. 4983), the Board of United States General Appraisers considered the classification of merchandise invoiced as "Cassis fruit juice" which was imported in casks. The question involved was whether it was dutiable under the provision for "cordials" in paragraph 292 of the Tariff Act of 1897, or under the provision for "other fruit juices" in paragraph 299. The court described the merchandise as follows:

The article is variously invoiced as "cassis fruit juice," "fruits au jus," and "fruit juice," and was imported in casks. It consists of the juice expressed from the black currant, and contains less than 18 percent of alcohol, which the testimony shows to have been added to prevent fermentation * * *.

The court held that the article was dutiable as a fruit juice rather than as a cordial. The court said:

It appears from the testimony, both of the importers and of the examiner of such merchandise at the port of New York, that cordials usually contain not less than 35 or 40 percent of alcohol, and are commonly imported in bottles and not in casks. The merchandise under consideration is unquestionably a fruit juice con-

taining less than 18 percent of alcohol, and should be so classified. It differs from the merchandise known as "creme de cassis," covered by Board decisions *in re Kaufmann* (G. A. 810) and *in re Chapuis* (G. A. 4736), which is also made from the juice of the black currant, but is imported in bottles and sold in the market as cordials. It appears from the testimony taken in these cases, and especially from that of the examiner, that goods of this character contain at least 35 percent of alcohol and are used as cordials, while the article in question is used for flavoring drinks, either plain or aërated, and in making puddings and sauces, and for other similar purposes.

In the case of *Kaufman & Blache* v. *United States*, T. D. 11705 (G. A. 810), which was distinguished by the court as indicated in the above excerpt, the decision reads as follows:

> The merchandise is "Crème de cassis," a beverage made of the juice of the currant combined with a heavy sirup and alcohol. It was assessed for duty as a cordial containing spirits at $2.50 per gallon, under paragraph 332, N. T. [1890]. The appellants claim that it is dutiable under paragraph 339 at 60 cents per gallon only, as a fruit juice containing not more than 18 per cent. of alcohol.
>
> The merchandise is put up in quart bottles, which are sealed, capped, and showily labeled, and is ready to go into the hands of the consumer. The article is not known in the trade as a fruit juice, but is listed, sold, bought, used, and commercially known as a cordial. As crème de cassis is a cordial containing spirits the assessment of duty was correct and the decision of the collector is hereby affirmed.

In the case of *N. Chapuis et al.* v. *United States*, 3 Treas. Dec. 659, T. D. 22401 (G. A. 4736), cited in the decision in the *Blache* case, *supra*, the court considered the question as to whether a number of beverages, one of which was "Jus de Fruits (Creme de Cassis)," was included within the Reciprocity Agreement with France of May 30, 1898 (30 Stat. 1774), and entitled to a reduction in duty from $2.25 per gallon to $1.75 per gallon under the terms of the treaty. The merchandise was classified by the collector under the provision for "Cordials, liqueurs * * * and other spirituous beverages" in paragraph 292 of the Tariff Act of 1897. The court held that the articles were liqueurs and that they were entitled to a reduction in duty under the terms of the treaty. The court said:

> We find, from the testimony taken at the hearing, that the importations in question embrace various kinds of cordials and other articles, which are known in France and in this country as liqueurs, and are bought and sold under the several names given in Schedule A accompanying this decision. We further find that all of the articles in question are products or manufactures of France, and hold that they are entitled to the benefit of the reduced rates of duty referred to in said proclamation, under the principles of the decision of May 24, 1900, made per Townsend, J., in the circuit court for the southern district of New York, in *Nicholas* v. *United States* (suit 2654, not yet reported, T. D. 22314). This decision covered a quantity of liqueur or cordial known under the name of chartreuse. It was decided by the court that the reciprocal commercial agreement between the United States and France embraced all such articles as are known in France and in this country under the name of liqueurs, which are made from a process of distillation.

The case of *Nicholas* v. *United States*, which was erroneously referred to in the decision of the court as suit 2654 instead of 2854, is reported in 122 Fed. 892.

The evidence in this case is not sufficient to establish that Cassis or Creme de Cassis is a fruit juice or fruit sirup within the provisions of paragraph 806 (a) as claimed by the plaintiffs. The essence of the black currant seems to have been withdrawn from the currants by steeping in wine alcohol from 50 to 60 days. This is a different process from that used in the manufacture of the merchandise in *O. C. Blache & Co.* v. *United States, supra*, in which decision it is shown that the juice was "expressed from the black currants" and that the alcohol was added to prevent fermentation.

We find, however, that the evidence establishes that Cassis or Creme de Cassis is used in the same manner as vermouth, and that, if it is a beverage, it is within the provision for "similar beverages not specially provided for" in paragraph 804 unless it is provided for elsewhere in the tariff law.

Paragraph 804 of the Tariff Act of 1922, which is identical with paragraph 804 herein under consideration, was construed in the case of *Porges & Levy* v. *United States*, 15 Ct. Cust. Appls. 298, T. D. 42474, and the court held that the provision "similar beverages" was limited to beverages. The court said:

We observe that each of the articles provided for by name is a beverage. Furthermore, the Congress has, by the use of the language "and similar beverages not specially provided for," plainly recognized that fact and specially limited the provisions of the paragraph to such articles.

The proviso clause also clearly indicates that the paragraph was intended to be limited to beverages.

In the case of *Strohmeyer & Arpe Co.* v. *United States*, 28 C. C. P. A. —, C. A. D. 121, which was not cited by the parties in this case, the question for decision was whether certain nonalcoholic preparations, one of which was grenadine, were dutiable under the provision for "similar beverages" in paragraph 808 of the Tariff Act of 1930, reading as follows:

PAR. 808. Ginger ale, ginger beer, lemonade, soda water, and similar beverages containing no alcohol, and beverages containing less than one-half of 1 per centum of alcohol, not specially provided for, 15 cents per gallon.

In determining the meaning of the term "beverages" in the paragraph above quoted, the court said:

We think it is clear from the provisions of paragraph 808, *supra*, that the Congress intended to provide therein for beverages only, and that it was not the intent of the Congress to include therein articles or preparations which, in their imported condition, are not beverages. See *Porges & Levy* v. *United States*, 15 Ct. Cust. Appls. 298, T. D. 42474, wherein it was held that paragraph 804 of the Tariff Act of 1922 (which is identical in language with paragraph 804 of the Tariff Act of 1930) was intended by the Congress to be limited to beverages.

It appears from the testimony which the court summarized in that case that grenadine is used in substantially the same manner as Creme de Cassis, or Cassis, that is, as an ingredient in alcoholic drinks. It was shown that, in addition to grenadine, the drinks contained:

"an ounce and a half of gin, an ounce and a half of applejack, and an ounce and a half of whisky," depending upon which of those alcoholic beverages is desired, and a "half a teaspoonful of Grenadine"; and that it is sometimes mixed with plain water, seltzer, or white rock, in which instance about one-half ounce of grenadine is used to a glass of water. There is no evidence of record that grenadine is ever drunk without being mixed with beverages.

In holding that grenadine is not a beverage, the court said:

Owing to the fact that the evidence of record clearly establishes that the involved grenadine is not used as a beverage in its imported condition, but, on the contrary, is used merely as a coloring or flavoring ingredient with beverages in making various mixed drinks, we must hold, for the reasons hereinbefore stated, that the involved grenadine is not dutiable under paragraph 808, *supra*, either directly or by similitude.

The uses of the Cassis, or Creme de Cassis, herein involved, as shown by this record, are substantially the same as the use of grenadine in the case cited, and, in harmony with the ruling in that case, we find that the record does not establish that the imported Cassis or Creme de Cassis is a beverage. Accordingly, the claim that the merchandise is dutiable under paragraph 804 or 806 is overruled.

There remains for consideration the question as to whether the merchandise invoiced as cordials having the specific names "Cassis," "Creme de Cassis," "Green Menthe," and "Cherry cordial" is subject to the tax of $2 per gallon under section 600 (a) of the Revenue Act of 1918, as amended in section 2 of the Liquor Taxing Act of 1934. (U. S. C. title 26, section 1150 (a).) It is claimed that the articles are not subject to any tax under the revenue act, but, if they are subject to tax, they should be assessed at the rate of 1¼ cents per half-pint only, under section 613 (a) of the Revenue Act of 1918, as amended by section 319 (d) of the Liquor Tax Administration Act. (49 Stat. 1939, 1952.)

The testimony of the chief distiller of the manufacturing company, taken by deposition (exhibit 2), with respect to the method of manufacturing the Cassis or Creme de Cassis has been quoted heretofore. As to the "Green Menthe," he testified that in producing the same a certain quantity of mint plants and wine alcohol were put into an alembic and distilled; that the first run of the distillation was not kept but the second part was used for the manufacture of mint alcoholate; that the merchandise contained no sweet wine, citrus-fruit wine, peach wine, cherry wine, berry wine, apricot wine, or apple wine, fortified, respectively, with grape brandy, citrus-fruit brandy, peach brandy, cherry brandy, berry brandy, apricot brandy, or apple brandy;

that the commodity was produced by a process of distillation; that the alcoholic content is 30 degrees by volume.

As to the process of manufacture of the cherry cordial, he testified that fresh cherries were put in alcohol for 60 days to obtain cherry juice; that the cherry juice was then mixed with wine alcohol and sugar syrup; that the product was not made by a process of distillation; that the alcoholic content was 32 degrees by volume.

The appraiser's report attached to protest 969776–G (C) states that "the Internal Revenue tax was assessed in accordance with Act of Congress H. R. 6131, 73rd Congress, known as the Liquor Taxing Act of 1934, which was approved Jan. 11, 1934" at the rate of $2 per proof gallon. In that act the rate of assessment in section 600 (a) (3) and (4) of the act of 1918, 40 Stat. 1105, as amended in the act of February 24, 1926, 44 Stat. 104, was further amended, 48 Stat. 313. The amended provision is printed in the Code of Laws of the United States of America, 1934 edition, on page 1140, as follows:

Section 1150. Tax—(a) Rate—(1) Distilled spirits generally. On and after January 12, 1934, there shall be levied and collected on all distilled spirits produced in or imported into the United States an internal revenue tax at the rate of $2.00 on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, to be paid by the distiller or importer when withdrawn from bond. * * *.

\* \* \* \* \* \* \*

(3) Products of distillation containing distilled spirits. All products of distillation, by whatever name known, which contain distilled spirits or alcohol, on which the tax imposed by law has not been paid, shall be considered and taxed as distilled spirits. (R. S. 3254.)

Section 319 (d) of the Liquor Taxing Administration Act of 1936 (49 Stat. 1939, 1952) contains the following provisions:

(d) Section 613 of the Revenue Act of 1918, as amended (U. S. C.; 1934 ed., title 26, sec. 1300 (a) (2); U. S. C., 1934., Supp. I, title 26, sec. 1300 (a) (2), is amended to read as follows:

Sec. 613 (a). Upon the following articles which are produced in or imported into the United States, after the date of the enactment of the Liquor Tax Administration Act, or which on the day after such date are on any winery premises or other bonded premises or in transit thereto or at any customhouse, there shall be levied, collected, and paid, in lieu of the internal-revenue taxes imposed thereon by law prior to such date, taxes at rates as follows, when sold, or removed for consumption or sale:

\* \* \* \* \* \* \*

On each bottle or other container of liqueurs, cordials, or similar compounds, by whatever name sold or offered for sale, containing sweet wine, citrus-fruit wine, peach wine, cherry wine, berry wine, apricot wine, or apple wine, fortified, respectively, with grape brandy, citrus-fruit brandy, peach brandy, cherry brandy, berry brandy, apricot brandy, or apple brandy, 1¼ cents on each one-half pint or fraction thereof;

Any of the foregoing articles containing more than 24 per centum of absolute alcohol by volume (except vermouth, liqueurs, cordials, and similar compounds made in rectifying plants and containing tax-paid sweet wine, citrus-fruit wine,

peach wine, cherry wine, berry wine, apricot wine, or apple wine, fortified, respectively, with grape brandy, citrus-fruit brandy, peach brandy, cherry brandy, berry brandy, apricot brandy, or apple brandy) shall be classed as distilled spirits and shall be taxed accordingly.

Counsel for the plaintiffs argues in his brief that the issue in this case is settled by the decision in *Batjer & Co.* v. *United States*, 11 Ct. Cust. Appls. 60, T. D. 38726. The merchandise in that case was cordials which were classified by the collector under the *eo nomine* provision therefor in paragraph 240 of the Tariff Act of 1913. The commodity was assessed also with an additional tax at the rate of $2.10 per gallon under the provisions for distilled spirits in section 300 of the Revenue Act of October 3, 1917. The court held that for a long period of time cordials had been differentiated by Congress from spirits distilled from grain and other materials and that the collector erred in classifying the cordials as distilled spirits under the revenue law. There was another provision in the internal revenue law which the court held applicable to the merchandise, however. That provision was section 309 which reads as follows:

Sec. 309. That upon all still wines, including vermuth, and upon all champagne and other sparkling wines, liqueurs, cordials, artificial or imitation wines or compounds sold as wine, produced in or imported into the United States, and hereafter removed from the customhouse, place of manufacture, or from bonded premises for sale or consumption, there shall be levied and collected, in addition to the tax now imposed by law upon such articles, a tax equal to such tax, to be levied, collected, and paid under the provisions of existing law.

The court held that the cordials were dutiable at $2.60 per gallon under paragraph 240 of the Tariff Act of 1913 and, by virtue of section 309, at an additional rate of $2.60 per gallon. A similar issue was raised with respect to bitters in the case of *Rosenbloom & Co. et al.* v. *United States*, 13 Ct. Cust. Appls. 63, T. D. 40884. In that case the collector classified bitters under the *eo nomine* provision therefor in paragraph 240 of the Tariff Act of 1913 and assessed duty thereon at $2.60 per gallon. He collected also a tax of $2.10 per gallon under section 300 of the Revenue Act of 1917, classifying the goods as distilled spirits intended for use as a beverage. The court cited *Batjer & Co.* v. *United States, supra,* and held, in harmony with the decision in that case, that bitters were not distilled spirits. As bitters were not mentioned in section 309 with the liquors and cordials the court held that bitters were not subject to any tax under the revenue act.

Counsel for the plaintiffs calls attention to the fact that section 309 has been repealed and is not now a part of the law and argues that since cordials have been distinguished from distilled spirits by Congress as stated in the *Batjer & Co.* case, *supra,* they cannot be classified as distilled spirits under the Revenue Act of 1918, as amended.

The plaintiffs claim also that the articles are not taxable at 1¼ cents per half-pint under section 319 (d) of the Liquor Taxing Act of 1936, above quoted, because the record shows that the imported articles do not contain "sweet wine, citrus-fruit wine, peach wine, cherry wine, berry wine, apricot wine, or apple wine, fortified, respectively, with grape brandy, citrus-fruit brandy, peach brandy, cherry brandy, berry brandy, apricot brandy, or apple brandy." Substantially the same question was considered in *Batjer & Co. et al.* v. *United States, supra,* and the court held that the cordials therein involved were not taxable under section 402 (e) of the Revenue Act of September 8, 1916, which appears to be the predecessor to section 613 of the Revenue Act of 1918, as amended by section 319 (d) above quoted. The court said:

It is true that paragraph (e) of section 402 of the revenue act of September 8, 1916, laid a tax on cordials *containing sweet wines fortified with grape brandy; whatever the name under which they were sold or offered for sale,* and that the Commissioner of Internal Revenue ruled that the tax thereby imposed could be assessed on such cordials only as contained fortified wine and that *so-called* cordials *if in fact wine or if sold as wine,* although containing fruit juices or distilled spirits, were taxable as wine. That ruling certainly limited paragraph (e) to such true cordials as contained wine or were sold as wine and exempted all other cordials from the tax, but the importers' contention that a like construction must be given to the word "cordials" in section 309 of the act of 1917, cannot be sustained inasmuch as that section is not limited to cordials containing sweet wine or to cordials sold as wine. [Italics quoted.]

Counsel for the defendant quotes in his brief the definition of "distilled spirits" in the United States Compiled Statutes, section 3248, page 2107, and argues that the commodities herein involved are distilled spirits within that definition. The same term is defined in section 10 (e) of the Liquor Taxing Act of 1934 (48 Stat. 313, 315) reading as follows:

SEC. 10 (e). As used in this section and in Title II, the term "person" includes an individual, a partnership, an association, and a corporation; and the term "distilled spirits" includes products produced in such manner that the person producing them is a rectifier within the meaning of section 3244 of the Revised Statutes, as amended.

The definition of "rectifier" in section 3244 of the Revised Statutes, page 622, 623, reads as follows:

SEC. 3244. Third. * * * Every person who rectifies, purifies, or refines distilled spirits or wines by any process other than by original and continuous distillation from mash, wort, or wash, through continuous closed vessels and pipes, until the manufacture thereof is complete, and every wholesale or retail liquor-dealer who has in his possession any still or leach-tub, or who keeps any other apparatus for the purpose of refining in any manner distilled spirits, and every person who, without rectifying, purifying, or refining distilled spirits, shall, by mixing such spirits, wine, or other liquor with any materials, manufacture any spurious, imitation, or compound liquors for sale, under the name of whisky, brandy, gin, rum, wine, spirits, cordials, or wine bitters, or any other name,

shall be regarded as a rectifier, and as being engaged in the business of rectifying: *Provided*, That nothing in this section shall be held to prohibit the purifying or refining of spirits in the course of original and continuous distillation through any material which will not remain incorporated with such spirits when the manufacture thereof is complete. * * *

A definition of the word "rectifier" in substantially the same language is contained in title 26, section 1398 (f) of the Code of Laws of the United States of America, 1934 edition, page 1179.

As Congress has defined "distilled spirits" as a product produced by a rectifier, it becomes important to examine the record in this case to determine whether or not the manufacturer was a rectifier within the statutory definition of that term. The testimony of the chief distiller of the company which manufactured the merchandise herein involved shows that the commodities were produced by mixing wine alcohol with other ingredients. As to the merchandise invoiced as "green menthe," he testified that "mint plants and wine alcohol is put into the alembic and distilled" and "the middle of the run is kept and mixed with sugar syrup." The witness did not testify that the process of distillation was used in the production of the articles having the specific names "Cassis," "Creme de Cassis," or "cherry cordial." He said those products were produced by steeping black currants, in the cases of the Cassis and Creme de Cassis, and fresh cherries, in the case of cherry cordial, in alcohol or wine alcohol for about 60 days and mixing the juice thus obtained with sugar, or with sugar syrup and wine alcohol. This process clearly brings the manufacturer within the following portion of the statutory definition of a rectifier:

* * * and every person who, without rectifying, purifying, or refining distilled spirits, shall, by mixing such spirits, wine, or other liquor with any material, manufacture any spurious, imitation, or compound liquors for sale, under the name of whisky, brandy, gin, rum, wine, spirits, cordials, or wine bitters, or any other name, shall be regarded as a rectifier * * *.

*United States* v. *Stone & Downer Co.*, 175 F. 33, T. D. 30228, has some bearing on the issue in this case. The court passed upon commodities which are comparable with the intermediate products used in the production of the articles herein involved. That decision covered two commodities. One of the articles consisted of belladonna leaves and stalks cut up and placed in alcohol, and the other consisted of aconite leaves and stalks cut up and placed in alcohol. The court held that the commodities were alcoholic compounds under paragraph 2 of the Tariff Act of 1897. It would seem that if the mere placing of belladonna leaves and stalks or aconite leaves and stalks in alcohol makes an alcoholic compound, the treatment to which each commodity in this case has been subjected makes it a "compound liquor," which is named in section 3244 of the Revised Statutes and section 1398 (f), title 26 of the Code of Laws of the United States of America as one of the products of a rectifier.

180

We find that the merchandise herein involved was produced by a rectifier and that it is distilled spirits within the definition of that term in section 10 (e) of the Liquor Taxing Act of 1934.

The "Green Menthe" has an additional characteristic which insures its classification as distilled spirits, namely, the process of distillation was used in its production. Section 3245 of the revised statutes, which is contained in section 1150 (3), title 26, of the Code of Laws of the United States, above quoted, states that "all products of distillation, by whatever name known, which contain distilled spirits or alcohol * * * shall be considered and taxed as distilled spirits."

We hold that the collector committed no error in classifying the merchandise in this case as distilled spirits under the internal revenue law. Although they are cordials, they are not within the provisions for cordials in section 613 (a) of the Revenue Act of 1918 as amended by section 319 (d) of the Liquor Tax Administration Act of 1936, as alternatively claimed by the plaintiffs, because they do not contain "sweet wine, citrus-fruit wine, peach wine, cherry wine, berry wine, apricot wine, or apple wine, fortified, respectively, with grape brandy, citrus-fruit brandy, peach brandy, cherry brandy, berry brandy, apricot brandy, or apple brandy," citing *Batjer & Co. et al.* v. *United States, supra.*

It may seem incongruous to assess the commodities as "cordials" under the Tariff Act of 1930, as amended by the trade agreement with France, and as "distilled spirits" under the Liquor Taxing Act of 1934, but "distilled spirits" is a broad term which includes cordials. Therefore, the commodities are more specifically provided for under the term "cordials" in the Tariff Act of 1930, as amended by the trade agreement, and, in the absence of a provision for cordials of the kind herein involved in the Liquor Taxing Act of 1934, they would fall within the provision for distilled spirits in that act.

Protest 969776–G (B) is overruled and protest 969776–G (C), which was abandoned by the plaintiffs, is dismissed. Judgment will be entered in favor of the defendant.