(C. D. 587)

De Fremery & Co. *v.* United States

United States Customs Court, Third Division

(Decided January 23, 1942)

*Lawrence & Tuttle* (*George R. Tuttle* and *Frank L. Lawrence* of counsel) for the plaintiffs.

*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks* and *Joseph F. Donohue*, special attorneys), for the defendant.

Before CLINE and KEEFE, Judges

CLINE, Judge: This case is before us on rehearing having been originally decided and reported in C. D. 455. The merchandise consists of various commodities invoiced as cassis, cazanove creme de cassis, green menthe, and cherry cordial. Duty was assessed on all of the commodities under the provision for cordials at the rate of $2.50 per gallon under paragraph 802 of the Tariff Act of 1930, as modified by the trade agreement between the United States and France, published in T. D. 48316. Plaintiff concedes the correctness of this classification except as to the cassis and cazanove creme de cassis. As to that merchandise it is claimed that duty should be assessed under paragraph 804 of the Tariff Act of 1930, because, it is alleged, it is similar to vermouth. The alternative claim is made that cassis and creme de cassis are dutiable as a fruit juice or fruit sirup, not specially provided for, containing one-half of 1 per centum or more of alcohol, at the rate of 70 cents per gallon and $5 per proof gallon on the alcohol contained therein, under paragraph 806 of the same law.

The provisions of the statute are as follows:

PAR. 802. Brandy and other spirits manufactured or distilled from grain or other materials, cordials, liqueurs, arrack, absinthe, kirschwasser, ratafia, and bitters of all kinds containing spirits, and compounds and preparations of which distilled spirits are the component material of chief value and not specially provided for, $5 per proof gallon.

PAR. 802 [Amended by Trade Agreement with France, T. D. 48316]

Brandy_____ $2.50 per proof gal.
Cordials, liqueurs, kirschwasser, and ratafia_____ $2.50 per proof gal.

PAR. 806 (a) Cherry juice, prune juice, or prune wine, and all other fruit juices and fruit sirups, not specially provided for, containing * * * one-half of 1 per centum or more of alcohol, 70 cents per gallon and in addition thereto $5 per proof gallon on the alcohol contained therein * * *.

PAR. 804. Still wines, including ginger wine or ginger cordial, vermuth, and rice wine or sake, and similar beverages not specially provided for, $1.25 per gallon: *Provided*, That any of the foregoing articles specified in this paragraph when imported containing more than 24 per centum of alcohol shall be classed as spirits and pay duty accordingly.

In addition to the assessment under the Tariff Act of 1930, there was levied a tax of $2 per gallon under section 600 (a) of the Revenue Act of 1918, as amended by section 2 of the Liquor Taxing Act of 1934.

In the original decision this court held that all of the commodities involved were subject to the internal revenue tax on the ground that they are distilled spirits. It was also held that the classification and assessment of the collector of customs upon the cassis and creme de cassis as cordials under paragraph 802, *supra*, was correct.

As set forth in the memorandum in support of plaintiff's motion for rehearing, the grounds in support of the motion are in substance that the court is asked to reconsider:

(1) Whether or not the provision in paragraph 804, *supra*, for "vermuth * * * and similar" beverages is not intended to imply that the term "beverages," for purposes of that paragraph, relates to articles used in like manner to vermouth, such as the cassis at bar.

(2) Even conceding that cassis may not be a beverage and therefore not a "similar beverage" within the meaning of said paragraph 804, is the similitude clause in paragraph 1559 of the Tariff Act of 1930 applicable? .

(3) Whether the definition of "distilled spirits" in section 10 of the liquor taxing act, *supra*, quoted and apparently relied upon by the court, is not limited to such "distilled spirits" as used in said section and in title II.

We have carefully reviewed our original decision and find no reason to alter our holding that the commodities invoiced as cassis and cazanove creme de cassis are properly dutiable under paragraph 804 of the Tariff Act of 1930, as assessed. Plaintiff contends that as the court held that cassis is used in the same manner as vermouth, that is, as an ingredient in alcoholic drinks, it is therefore dutiable as a beverage similar to vermouth under the wording of said paragraph 804. It is further contended that whatever may be the meaning of the term "beverage" as used in other paragraphs, as found in paragraph 804 it is used to denote articles which are similar to vermouth. In other words, plaintiff contends that by the use of the expression "similar beverages" in said paragraph the legislature in effect defined "beverages" for the purpose of that paragraph, and therefore the use of the word "similar" indicates that the beverages there contemplated were those possessing the qualities of the articles enumerated in that paragraph; that vermouth is to be deemed a beverage and that articles having a similar use to vermouth are likewise to be deemed beverages.

In answering this contention the Government in its brief construes the term "including" used in the paragraph to be a term of addition, that is, it adds to the paragraph commodities, i. e., "ginger wine" and "ginger cordial" which would not otherwise be embraced in the term "still wines." It is further claimed by the Government in its brief that the inclusion of vermouth in the paragraph points to the same construction, that is, that vermouth is not generally recognized as a still wine, because if it were, it would have been unnecessary to enumerate it after the generic term. This argument, it seems to the court, finds support in the publication "Grapes, Raisins & Wines," being Report No. 134—Second Series of the United States Tariff Commission, where we find the following in a footnote on page 16:

Vermouth is technically a fortified wine made from basic natural wines and brandy. However, the peculiar flavor imparted by the extracts which are added, as well as the use of vermouth in mixed drinks, marks it as distinct from other fortified wines.

Again on page 406 of the same publication, under the title "Official Definitions of Wines and Brandies" the following appears:

*Vermouth.*—(a) "Vermouth" is a compound having an alcoholic content of not less than 15 percent by volume, made by the mixture of extracts from macerated aromatic flavoring materials with grape wine containing fortifying grape spirits or added alcohol, and manufactured in such a manner that the product possesses the taste, aroma, and characteristics generally attributed to vermouth.

While conceding that the classification of vermouth as a beverage is dependent upon its use, the Government contends that under the authorities the term "beverage," as used in tariff statutes, should be construed according to its common meaning as a drink, rather than as an ingredient of a drink. In this connection the following cases are cited: *Strohmeyer & Arpe Co.* v. *United States*, 28 C. C. P. A. 34, C. D. 121; *Crosse & Blackwell* v. *United States*, 70 Treas. Dec. 380, T. D. 48556, and *United States* v. *Ritchie & Co.*, 28 C. C. P. A. 51, C. A. D. 124.

In our original decision we held that the use of these articles, cassis and creme de cassis, is substantially the same as is the use of grenadine involved in the *Strohmeyer & Arpe* case, *supra*, and that the evidence presented here fails to establish that they are beverages. We are still of the opinion that our holding in that respect was correct in view of the record.

The plaintiff argues also that if cassis and creme de cassis are not within the provision for "similar beverages" in paragraph 804 the similitude clause in paragraph 1559 should be invoked and make the merchandise dutiable at the same rate as vermouth. That provision reads as follows:

PAR. 1559. That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be

applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; * * *

The language quoted indicates that the application of the similitude clause is limited to substances which are not enumerated in the act. In other words, it is applicable only when the provisions for nonenumerated articles in paragraph 1558 would apply to merchandise in the absence of the similitude provision. In the case of *Bartley Bros. & Hall et al.* v. *United States*, 3 Ct. Cust. Appls. 363, 367, T. D. 32961, the court said:

* * * It is the duty of the court to apply the similitude clause before resort can be had to the nonenumerative catch-all provision of the tariff act. *Kahn* v. *United States* (100 Fed. Rep., 635,637); *Arthur* v. *Fox* (108 U. S. 125).

In the case of *Arthur* v. *Fox*, cited in the above excerpt, the court described the scope and intent of the similitude clause as follows:

* * * If an article is found not enumerated in the tariff laws, then the first inquiry is whether it "bears a similitude, either in material, quality, texture, or use to which it may be applied, to any article enumerated * * * as chargeable as with duty." If it does, and the similitude is substantial, then, in the language of the court in *Stuart* v. *Maxwell*, supra, "it is to be deemed the same, and to be charged accordingly." In other words, although not specifically enumerated, it is provided for under the name of the article it most resembles.

As the provisions of paragraph 1558 are not involved in this case, the controversy being between paragraph 802, as amended, and paragraph 804, there appears to be no reason why the application of the similitude clause should be considered.

It is not established by the record that the cassis and creme de cassis are not cordials, as classified by the collector. Therefore, even if it were conceded that they are beverages, they are more specifically provided for as "cordials" in paragraph 802, as amended by trade agreement, than as "similar beverages not specifically provided for" in paragraph 804.

With respect to the internal revenue tax assessed by the collector on all of the commodities at the rate of $2 per gallon under section 600 of the Revenue Act of 1918, 40 Stat. 1105, as amended by the act of February 26, 1926, 44 Stat. 104, and by the Liquor Taxing Act of 1934, 48 Stat. 313 (U. S. C., 1934 ed., sec. 1150-a), we quoted in our original decision the definition of "distilled spirits" in section 10 (e) of the Liquor Taxing Act of 1934, *supra*, and held that, inasmuch as the commodities were described in that definition, Congress evidently intended that they should be taxed as distilled spirits. Counsel for the plaintiff, in his application for rehearing, pointed out that the definition referred only to the term "as used in this section and in title II" and that the taxing provision covering distilled spirits was not included within that portion of the law.

We find that Congress has defined "distilled spirits" in a number of other instances, however. Sections 3248 and 3254 of the United States Compiled Statutes, 1901, read as follows:

Sec. 3248. Distilled spirits, definition of.

Distilled spirits, spirits, alcohol and alcoholic spirit, within the true intent and meaning of this act, is that substance known as ethyl alcohol, hydrated oxide of ethyl, or spirit of wine, which is commonly produced by the fermentation of grain, starch, molasses, or sugar, including all dilutions and mixtures of this substance; * * *

Sec. 3254. Products of distillation containing spirits.

All products of distillation, by whatever name known, which contain distilled spirits or alcohol, on which the tax imposed by law has not been paid, shall be considered and taxed as distilled spirits.

These definitions were evidently in force at the time of the importations in this case, which were September 2, 1936 and July 17, 1937, as evidenced by the inclusion thereof in the United States Code, 1940 edition, title 26, section 2809 (b), page 2306, and section 2800 (2), page 2298. In section 2809 (b) the words "within the true intent and meaning of this chapter" appear instead of the words "within the true intent and meaning of this act," found in section 3248.

In the Federal Alcohol Administration Act of August 29, 1935 (49 Stat. 977), the term "distilled spirits" is defined in section 17 (a) (6) in substantially the same language as that used in section 3248 of the United States Compiled Statutes, the only substantial difference being that the words "which is commonly produced by the fermentation of grain, starch, molasses, or sugar" after the words "spirit of wine" were omitted. Section 17 (a) is headed by the words "as used in this Act," however, and it is questionable whether that definition could be considered in connection with the assessment in this case, although the merchandise was imported while that act was in force.

The record shows that the merchandise invoiced as "green menthe" is distilled. Louis Clavieres, the chief distiller of the manufacturing company whose testimony was taken by deposition, said that in the manufacture of the commodity "a certain quantity of mint plants and wine alcohol is put into the alembic and distilled," and "after distillation the middle of the run is kept and mixed with sugar syrup." Since the green menthe is produced by distillation, it comes directly within the definition in section 3254, above quoted.

The witness testified that in producing "cassis" and "creme de cassis," fresh black currants are put in wine alcohol for 50 or 60 days and the juice thus obtained is mixed with sugar. In producing "cherry cordial," fresh cherries were put in alcohol for about 60 days to obtain cherry juice. Then this juice was mixed with wine alcohol and sugar sirup. These two commodities are within the definition of

"distilled spirits" in section 3248, above quoted, because they come within that portion of the definition reading "all dilutions and mixtures of this substance." The testimony indicates that either alcohol or wine alcohol was mixed with the other ingredients and there is no testimony showing that the alcohol and wine alcohol used in the mixture were not produced in the manner specified in the definition.

For the reasons stated in our original decision and those above set out, we adhere to our original ruling and hold that protest 969776–G (B) should be overruled. Protest 969776–G (C) which was dismissed in our original decision was not covered by the application for rehearing and is not now involved. Judgment will be entered in favor of the defendant.