TI HANG LUNG & CO. *v.* UNITED STATES (NO. 4484)[1]

United States Court of Customs and Patent Appeals, February 7, 1945

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for appellant.
*Paul P. Rao,* Assistant Attorney General (*Richard F. Weeks,* special attorney, of counsel), for the United States.

[Oral argument December 5, 1944, by Mr. Tuttle and Mr. Weeks]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges

GARRETT, Presiding Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division, overruling the protest of the importer by which recovery is sought of monies assessed and collected by the Collector of Customs at the port of San Francisco, Calif., as an internal revenue tax upon merchandise invoiced as "rice wine (Pak Nor Mi),"

[1] C. A. D. 301.

imported from China. It was entered for warehouse on December 2, 1941. The entry was liquidated June 16, 1942.

At the trial of the case no original evidence was introduced respecting the exact nature of the particular merchandise involved, but the importer called as a witness an examiner at the port of San Francisco who testified that it is "of the same type" as that which was involved under the Chinese name of "Pak Nor," in the case of *Columbia Co. v. United States* (Protest 981989–G), which was decided by the Customs Court November 12, 1940. See C. D. 395, 5 Cust. Ct. 175. Thereupon, by agreement of counsel for the respective parties, and with the approval of the court, the record in that case was incorporated as a part of the record in the instant case.

Based upon the testimony in that case, the brief for the Government in the instant case states (page reference to record being omitted):

Pak Nor Mi is a rice wine. It is made with thirty pounds of rice boiled with ten pounds of water until the water is boiled away. Thereafter the substance is allowed to cool and after cooling three pounds of a kind of liquor cake or yeast is broken up like a cracker, scattered into the rice and mixed up well. The substance is divided into three jars, with enough water to cover the rice, and left to ferment for a month. After the fermentation fifteen pounds of weak liquor are added to each jar and the whole is put away for four months. This liquor is made by cooking rice, fermenting it with yeast, and then distilling it once. After the four months' period everything is poured out of the jars, left to stand, strained through cotton cloth, and bottled.

Thus the imported article is a beverage made by two processes. The first involves the fermentation of grain (rice). The second, the production of an alcoholic liquor by fermentation and distillation. The fermented grain liquid and the distillate are mixed together to form the imported material.

The description of the process of making the merchandise stated in the brief for appellant is substantially the same as that above quoted from the Government brief, but the brief for appellant added the following (record page references omitted):

In addition to the above process it was also shown by testimony of a chemist that Pak Nor is a fermented liquor or wine, fortified. That while "distilled spirits" do not contain any solid matter, the Pak Nor contained 14.8 grams of solids per hundred c. c. (cubic centimeter). Consequently with an *assumed* specific gravity of 1 the total solids equalled 14.80 percent by weight. It was further shown that the Pak Nor contained 21.93 percent of alcohol by volume. [Italics quoted.]

The collector assessed customs duty at the rate of $1.25 per gallon, the merchandise being classified for customs purposes under paragraph 804 of the Tariff Act of 1930, which reads as follows:

PAR. 804. Still wines, including ginger wine or ginger cordial, vermuth, and rice wine or sake, and similar beverages not specially provided for, $1.25 per gallon: *Provided*, That any of the foregoing articles specified in this paragraph when imported containing more than 24 per centum of alcohol shall be classed as spirits and pay duty accordingly.

No protest was made against the customs levy, but in addition to it there was an assessment at the rate of $4 per gallon as an internal revenue tax, and this levy constitutes the subject matter of this protest.

The "Pak Nor" which was involved in the *Columbia Co.* case, *supra*, had been treated for both customs duty and internal revenue tax in the same manner, and in that case the Customs Court held that it was subject to the customs duty but not subject to the internal revenue tax. There was no appeal from that decision which, as has been stated, was rendered November 12, 1940.

At a later date the Customs Court had before it another case in which (while the merchandise *per se* differed from "Pak Nor") there was involved the construction of internal revenue laws similar to those here involved. That court rendered a decision on March 25, 1941, *DeFremery & Co.* v. *United States*, C. D. 455, 6 Cust. Ct. 167, and another (upon reconsideration) on January 23, 1942, C. D. 587, 8 Cust. Ct. 113. It was held in both decisions that certain of the merchandise was subject to the internal revenue tax which the collector had assessed. The case was appealed to this court and decided by us June 10, 1943. *DeFremery & Co.* v. *United States*, 31 C. C. P. A. (Customs) 83, C. A. D. 253, 138 F. (2d) 161. We affirmed the decision of the Customs Court, holding the merchandise subject to the internal revenue tax, and (on October 4, 1943) denied a petition for rehearing after fully considering the argument made in the brief accompanying it.

Appellant thereafter filed petition with the United States Supreme Court for certiorari to obtain a review of our decision. The petition was denied by the Supreme Court March 6, 1944.

Counsel for appellant in that case is counsel for appellant in the instant case, and what is here sought is, in effect, a retrial of the issue there decided.

The merchandise involved in the *DeFremery & Co.* case, *supra*, consisted of cassis, green menthe, and cherry cordial. It was imported in 1936 and 1937. In our decision we quoted verbatim certain statutory provisions of the 1934 U. S. Code. We also quoted R. S. § 3248. Those were the provisions in effect at the times of the importations there involved.

On February 10, 1939, the Internal Revenue Code was enacted (53 Stat. 298), and since the merchandise here involved was imported in 1941, its taxable status (other than the customs duty) must be determined under the provisions of that code, as subsequently amended.

The pertinent provisions of that code do not differ (except as to rates) from the pertinent provisions which we quoted in the decision

of the *DeFremery* case, *supra*, but since the sections are differently numbered, we deem it proper to here quote the following:

Internal Revenue Code, section 2800 (a) (1) (2); (c) (53 Stat. 298):

SEC. 2800. TAX.

(a) RATE—

(1) DISTILLED SPIRITS GENERALLY.—There shall be levied and collected on all distilled spirits (except brandy) in bond or produced in or imported into the United States an internal revenue tax at the rate of $2.25 (and on brandy at the rate of $2.00) on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, to be paid by the distiller or importer when withdrawn from bond.

(2) PRODUCTS OF DISTILLATION CONTAINING DISTILLED SPIRITS.—All products of distillation, by whatever name known, which contain distilled spirits or alcohol, on which the tax imposed by law has not been paid, shall be considered and taxed as distilled spirits.

\*    \*    \*    \*    \*    \*    \*

(c) TIME OF ATTACHMENT.—The tax shall attach to distilled spirits, spirits, alcohol or alcoholic spirit, within the meaning of subsection (b) of section 2809 as soon as this substance is in existence as such, whether it be subsequently separated as pure or impure spirit, or be immediately, or at any subsequent time, transferred into any other substance, either in the process of original production or by any subsequent process.

Section 533 of the act of September 20, 1941 (55 Stat. 708):

SEC. 533. DISTILLED SPIRITS.

(a) RATE ON DISTILLED SPIRITS.—Section 2800 (a) (1) of the Internal Revenue Code is amended by striking out "at the rate of $2.25 (and on brandy at the rate of $2)" and by inserting in lieu thereof "at the rate of $4", and by striking out "(except brandy)".

Internal Revenue Code, section 2809 (a) and (b) (1), (53 Stat. 307):

SEC. 2809. DEFINITIONS.

(a) DISTILLER.—Every person who produces distilled spirits, or who brews or makes mash, wort, or wash, fit for distillation or for the production of spirits, or who, by any process of evaporization, separates alcoholic spirit from any fermented substance, or who, making or keeping mash, wort, or wash, has also in his possession or use a still, shall be regarded as a distiller.

(b) DISTILLED SPIRITS—

(1) GENERAL DEFINITION.—Distilled spirits, spirits, alcohol, and alcoholic spirits, within the true intent and meaning of this chapter, is that substance known as ethyl alcohol, hydrated oxide of ethyl. or spirit of wine, which is commonly produced by the fermentation of grain, starch, molasses, or sugar, including all dilutions and mixtures of this substance.

For reasons hereinafter appearing, we also quote section 3248, R. S.

SEC. 3248. Distilled spirits, spirits, alcohol, and alcoholic spirits, within the true intent and meaning of this act, is that substance known as ethyl alcohol, hydrated oxide of ethyl, or spirit of wine, which is commonly produced by the fermentation of grain, starch, molasses, or sugar, including all dilutions and mixtures of this substance; and the tax shall attach to this substance as soon as it is in existence as such, whether it be subsequently separated as pure or impure spirit, or be immediately, or at any subsequent time, transferred into any other

substance, either in the process of original production or by any subsequent process.

It will be observed that the substance of the last-quoted section is embodied in the Internal Revenue Code, section 2800 (a) (2) (c) and section 2809 (b) (1).

While the record in the instant case does not contain any statement by the collector respecting the reasons for his action, it is obvious that the internal revenue tax was assessed because the merchandise was deemed to be within the definition of distilled spirits stated in section 2809 (b) (1) of the Internal Revenue Code, *supra*—specifically within the meaning of that portion reading, "including all dilutions and mixtures of this substance."

From the description of the merchandise above given, we think it clear that it does fall within that definition. It is, therefore (so far as internal revenue taxation is concerned), in a category with the merchandise involved in the *DeFremery* case, *supra*.

With two exceptions the arguments presented by counsel for appellant upon the question of law are, in all material respects, the same as those presented in their briefs filed first and last during the consideration of the *DeFremery* case, *supra*.

The first exception relates to the status of R. S. § 3248, above quoted.

As has been stated, the Internal Revenue Code had not been enacted at the time the merchandise in the *DeFremery* case, *supra*, was imported, and the definition which we held applicable there was that embraced in R. S. § 3248 (restated in section 1158 (b) of the 1934 U. S. Code), which had its origin as a part of section 4 of the act of July 20, 1868 (15 Stat. 125), and became a part of the Revised Statutes enacted in 1874. In that case it was conceded that the section had never been repealed, and that it was in full force and effect on the dates of the importations.

It was pointed out in our decision that at the time the section was enacted no. internal revenue taxes were being imposed upon *imported* merchandise, the first of such taxes upon "distilled spirits" being provided in the War Revenue Act of 1917 (40 Stat. 300), but for the reasons stated at length, and which need not be here repeated, we held that the *definition* in the statute became applicable to *imported* merchandise as well as to *domestic* merchandise.

It is now contended that R. S. § 3248 was repealed by section 4 of the Internal Revenue Code to which the instant merchandise is subject. It may be conceded that this contention is correct but that does not affect the situation here because the defining language was at the same time reenacted in section 2809 (b) (1) of that code. There was no period during which it was not in effect as statutory law.

The other exception relates to administrative practice, it being

claimed by appellant that the "rule of the *DeFremery* case  \*  \*  \* has not been followed administratively, either before or since the decision was published."

Upon this point the brief on behalf of the Government states:

The administrative practice referred to by appellant, indicating, according to appellant, that fermented sake and rice wine have not been considered subject to the tax, is based on rulings in 1940, 1941, and 1943. The statute was already in existence. Therefore, the so-called rulings can furnish no index of legislative intent.

We think it obvious that the matter of "administrative practice" requires no consideration in the construction of the statutes here involved.

We adhere to the ruling stated in our decision in the *DeFremery* case, *supra*.

The judgment of the Customs Court is *affirmed*.